KOERNER, APPELLANT, *v.* NORTHERN PACIFIC RY. CO., RESPONDENT.

(No. 4,046.)

Submitted November 12, 1919. Decided December 1, 1919.)

[186 Pac. 337.]

*Personal Injuries—Master and Servant—Railroads—Settlement of Claim—Release — Lack of Mental Capacity — Burden of Proof—Ratification— Insufficiency ˙ of Evidence — Directed Verdict—Presumptions—Contracts.*       。

Personal Injuries—Proximate Cause—Complaint—Sufficiency.
  1. *Held,* that the complaint in an action for personal injuries resulting from the bursting of a railway water-tank, which, after alleging negligence in its construction in two particulars, charged that "thus" the tank was rendered unsafe, dangerous, *etc.,* by the

use of the adverb "thus," characterized both acts as negligent, and not only the last one mentioned.

Contracts—Fraud—Lack of Mental Capacity—*Quantum* of Proof Required.

2.   Under subdivision 5, section 8028, Revised Codes, fraud or lack of mental capacity to enter into a contract may be established by a bare preponderance of the evidence.

Personal Injuries—Release from Liability—Burden of Proof.

3.   In a personal injury action, where defendant railway company relied upon a settlement agreement between it and plaintiff, and the latter in reply alleged that if he ever signed a release, it was at a time when his mental faculties were so impaired as to render him incompetent to enter into a contract, the burden was upon plaintiff to show such want of capacity.

Trial Practice—Directed Verdict—Presumptions.

3a.   On motion for a directed verdict, every fact should be deemed proved which the evidence offered by plaintiff tends to prove.

Same—Directed Verdict—When Proper.

4.   The district court should not withdraw a case from the jury unless, as a matter of law, recovery cannot be had upon any view of the evidence, including the legitimate inferences to be drawn from it.

Contracts—Prerequisites.

5.   A contract results only from an offer made by one of the parties and its unconditional acceptance by the other in all its terms.

Personal Injuries — Written Release from Liability — Validity — When Jury Question.

6.   *Held,* that in view of the nature of plaintiff's injury—fracture of the skull—and his testimony that he never knowingly executed a release, and never knew of its existence or the claim of defendant that final settlement between him and it had been made, until a year after an interview he had with defendant's claim agent, the question whether the settlement agreement was his voluntary act was a question for the jury, and that the court erred in directing a verdict for defendant.

Same—Settlement—Written Release from Liability—Ratification.

7.   One who, during the time he was not mentally competent, signs an agreement of settlement for personal injuries, and thereafter, when in control of his faculties, ratifies the settlement, is bound by it as fully as if it had been unavoidable in the first instance. (Rev. Codes, sec. 4994.)

[As to the effect of releasor's mental capacity on release of claim for personal injury, see note in 3 **Ann. Cas.** 574.]

Same—Ratification of Contract of Settlement—Essentials.

8.   To constitute ratification—which is the confirmation of a previous act done either by the party himself or by another—there must have been an acceptance of the results of the act with an intent to ratify and with full knowledge of all the material circumstances.

Same—Ratification of Contract of Settlement—Evidence—Insufficiency.

9.   Letters written by plaintiff to defendant company's claim agents, examined and held not to have warranted the trial court's action in directing a verdict for defendant on the ground that they conclusively established his ratification of an alleged written release, in view of his testimony that he had no knowledge of the agreement or its contents.

*Appeals from District Court of Yellowstone County; A. C. Spencer, Judge.*

ACTION by Jacob C. Koerner against the Northern Pacific Railway Company. The court directed a verdict for defendant, and from the judgment and an order denying his motion for new trial, plaintiff appeals. Reversed and remanded for new trial.

*Mr. E. E. Enterline, Mr. T. W. La Fleiche* and *Messrs. Knauf & Knauf,* for Appellant, submitted a brief; *Mr. Enterline* and *Mr. John Knauf,* the latter of the Bar of the State of North Dakota, argued the cause orally.

The defendant pleaded as one of its defenses that it had made settlement with and paid to plaintiff the sum of $1,250 in full settlement of his claim for the injuries complained of in this action. The plaintiff in reply has disclaimed such settlement, and the testimony on that issue is in dispute. We believe it to be universally held that, where, as here, one signs a release without any knowledge of what he is doing, the release will be voided. (*Pioneer Cooperage Co.* v. *Romanowicz,* 186 Ill. 9, 57 N. E. 864.) This court has passed almost squarely on the subject involved in *Michalsky* v. *Centennial Brewing Co.,* 48 Mont. 1, 134 Pac. 307, where it was held that a release signed by one under the influence of opiates should be voided, and that it was even unnecessary to tender back money paid plaintiff. (See, also, *Chicago, W. D. Ry. Co.* v. *Mills,* 105 Ill. 63, 2 Am. Neg. Cas. 654; *Merrill* v. *Pike,* 94 Minn. 186, 102 N. W. 393, 17 Am. Neg. Rep. 582.) "When it appears that either party was in a situation as to his physical condition or as to his state of mind, which makes it probable that he acted without an understanding of the act with which he is charged, the instrument itself may be disregarded." (*Union Pac. Ry. Co.* v. *Whitney,* 198 Fed. 784, 117 C. C. A. 392; *Harlow* v. *Western Cartridge Co.,* 179 Ill. App. 515, 8 N. C. C. A. 517, note; *See* v. *Carbon Block Coal Co.,* 159 Iowa, 413, 138 N. W. 825, 141 N. W.

1048; *Louisville & N. R. Co.* v. *Winkler*, 162 Ky. 843, 173 S. W. 151, 9 N. C. C. A. 146; *Ipock* v. *Atlantic & N. C. R. Co.,* 158 N. C. 445, 74 S. E. 352.) In this latter case the mental capacity of the plaintiff had been affected for some months, during which he signed a $150 release and a $1,500 verdict was sustained. (See, also, *St. Louis & S. F. R. Co.* v. *Nichols,* 39 Okl. 522, 136 Pac. 159; *New Bell Jellico Coal Co.* v. *Oxendine,* 155 Ky. 840, 160 S. W. 737; *Texas & P. Ry. Co.* v. *Hubbard* (Tex. Civ.), 169 S. W. 1058; *Griffith* v. *American Bridge Co.,* 163 App. Div. 597, 148 N. Y. Supp. 994.) The best courts of the Union hold that when a release is executed by one who is mentally incapacitated to make a contract, the question as to the validity or legality of the release is for the consideration of the jury. (*Dixon* v. *Brooklyn City & N. R. Co.,* 100 N. Y. 170 (179), 3 N. E. 65, 5 Am. Neg. Cas. 245; *Girard* v. *St. Louis Car etc. Co.,* 123 Mo. 358, 45 Am. St. Rep. 556, 25 L. R. A. 514 (16), 27 S. W. 648.)

There was no ratification of the release or settlement because the plaintiff never gained a true knowledge of the alleged settlement until the release was shown him while testifying on the stand. A ratification necessarily presupposes a knowledge of the act to be ratified. (*Russell* v. *Erie R. Co.,* 70 N. J. L. 808, 1 Ann. Cas. 672, 67 L. R. A. 433, 59 Atl. 150; *Blen* v. *Bear River etc. Min. Co.,* 20 Cal. 602, 613, 81 Am. Dec. 132; *Miller* v. *Ahrens,* 163 Fed. 870.)

The fact that plaintiff kept the amount of money paid him, instead of returning it, was not a ratification. The pleadings and entire actions of the defendant show that it would have been useless to tender back the money. It would have been an idle ceremony. (*Abrahams* v. *Los Angeles T. Co.,* 124 Cal. 411, 57 Pac. 216–218; *Girard* v. *St. Louis Car Wheel Co.,* 123 Mo. 358, 45 Am. St. Rep. 556, 25 L. R. A. 514, 516, 27 S. W. 648.) It is held that, where a release is found to have been obtained by fraud practiced upon one incapable, because of mental weakness, to validly enter into such a contract, no necessity exists for refunding the fruits of the release before action

is brought.  In the case at bar, the plaintiff was wholly incapacitated, and without any will power to contract.  There was no assent.  It was unnecessary to return the money before starting this action.  (*St. Louis & S. F. R. Co.* v. *Richards,* 23 Okl. 256, 23 L. R. A. (n. s.) 1032, 102 Pac. 92; *O'Brien* v. *Chicago etc. Ry. Co.,* 89 Iowa, 644, 57 N. W. 425.)

*Messrs. Johnston & Coleman* and *Messrs. Gunn, Rasch & Hall,* for Respondent, submitted a brief; *Mr. Carl Rasch* argued the cause orally.

The following cases are conclusively determinative of the validity of the settlement made and the release given by the plaintiff here: *Frazier* v. *Missouri Pac. Ry. Co.,* 97 Kan. 285, 154 Pac. 1022; *St. Louis, I. M. & S. Ry. Co.* v. *Campbell,* 85 Ark. 592, 109 S. W. 539; *Lamden* v. *St. Louis & S. W. Ry. Co.,* 115 Ark. 238, 170 S. W. 1001; *Oakes* v. *Chicago, B. & Q. R. Co.,* 157 Iowa, 15, 137 N. W. 1062; *Fahey* v. *Detroit United Ry.,* 160 Mich. 629, 125 N. W. 704; *Pope* v. *Bailey-Marsh Co.,* 29 N. D. 355, 151 N. W. 18; *Laird* v. *Union Traction Co.,* 208 Pa. St. 574, 57 Atl. 987; *Arkansas Valley Ry. etc. Co.* v. *Ebeling,* 62 Colo. 105, 160 Pac. 1034.

The appellant's cases, cited upon this point, do not meet the conditions of the case at bar.  In most of them the ground upon which it was sought to avoid the settlement and release was fraud and deceit in effecting the settlement by misrepresentations of facts, and the question determinative of the issue as to the validity of the settlement and release was whether such representations were made, and, if made, whether they induced the making of the settlement.  In those of the cases cited and relied upon in which the invalidity of the settlement was asserted upon the ground of the plaintiff's mental incapacity to understand the transaction, the determination of the question of mental competency was required to be made in every case upon the conflicting evidence of the parties with reference to the plaintiff's condition at the time of making the settlement.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Jacob C. Koerner was injured while employed by the Northern Pacific Railway Company repairing a water-tank at Brackett, North Dakota, and brought this action to recover damages. At the conclusion of the evidence the trial court directed a verdict for the defendant, and plaintiff has appealed from the judgment entered thereon and from an order denying his motion for a new trial.

1. The injury resulted from the bursting of a water-tank, [1] and the negligence relied upon was the use of nails instead of wrought iron rivets for splicing the steel hoops used to hold the staves of the tank in place, and permitting the nails to rust and corrode so that they became weakened, thus rendering the tank unsafe and dangerous.

This case is not analogous to the case of *Flaherty* v. *Butte Electric Ry. Co.,* 40 Mont. 454, 135 Am. St. Rep. 630, 107 Pac. 416, wherein the complaint set forth general allegations of negligence, followed by a statement of the particular acts of negligence which proximately caused the injury. As we read this complaint, it charges negligence in the use of the nails and also in permitting them to rust and corrode. The adverb "thus" used in the concluding clause of paragraph 4 characterizes both acts and not the last one merely.

2. Without reviewing the evidence at length, we content [2–6] ourselves with saying that we think it is sufficient to make out a *prima facie* case of actionable negligence.

3. In bar of plaintiff's right to recover, the defendant alleged in its answer that after the injury was received by plaintiff, the defendant company paid him $1,250 in full settlement and discharge of all claims for damages arising from the injuries occasioned by the bursting of the water-tank and received a written release or acquittance signed by plaintiff. In reply the plaintiff alleged that if he ever signed a release or acquittance, he did so at a time when his faculties were so impaired as the result of his injury that he was mentally incompetent to enter into the contract.

Upon the trial defendant introduced in evidence the draft for $1,250, with plaintiff's indorsement thereon showing that the same had been paid; evidence that plaintiff had used the money, and the release signed by plaintiff. In explanation plaintiff testified that he met Taylor and Bohn, the defendant's claim agents, at their request for the purpose of considering a settlement of his claim for damages; that after some preliminary remarks, Taylor, who acted as spokesman, offered him $1,000; that he indignantly refused the offer and, when Taylor asked him to state the amount he wanted, he replied that he would not settle with Taylor at all; that Taylor then said in effect that as it would be only a short time until he would be practically well—perhaps a year, all told—the company would pay him $75 per month for a year's lost time, and $350 to compensate his mother for boarding him and caring for him during that period, and then give him an examination to ascertain his physical and mental condition and settle with him for his injuries; and that this proposition was satisfactory to him. Plaintiff testified further as to the character and extent of his injury—a fracture of the skull necessitating a trephining operation—the resulting pains in his head and epileptic fits. He testified that on the morning he met the claim agents he was suffering intensely from pains in his head and was under the influence of opiates; that during the conference he had dizzy spells; that after the proposal satisfactory to him was made he had no further recollection of what transpired, until the afternoon when he found himself at his mother's home; that he had no recollection of receiving the draft or signing the release and never consciously agreed to a final settlement or release, and that, if he had been in control of his faculties, he would not have made final settlement for the amount mentioned in the release and would not have signed the release. His mother testified as to plaintiff's mental and physical condition when he left her home to meet the claim agents and his condition when he returned. Two physicians testified that in their

opinion he was not mentally competent to enter into the settlement agreement.

Counsel for respondent have cited many cases in each of which the claimant sought to avoid a settlement agreement. We are not prepared to say that we find fault with the conclusion reached in any of them. In most of the cases there was clearly a failure on the part of the claimant to maintain the burden of showing that the release was not his voluntary act. Two of the cases are exceptional. In *Laird* v. *Union Traction Co.,* 208 Pa. St. 574, 57 Atl. 987, it is said: "No rule of equity is better established in this state than that to set aside a written instrument, the evidence must be clear, precise and indubitable, whether the allegation be fraud practiced by the beneficiary under it or incapacity on the part of him who executed it." In *Pope* v. *Bailey-Marsh Co.,* 29 N. D. 355, 151 N. W. 18, it is said: "This court in numerous instances has recognized and enforced the general rule that solemn written instruments cannot be impeached for fraud or other cause except upon proof that is clear, satisfactory and convincing and of such character as to leave in the mind of the chancellor no hesitation or substantial doubt."

Assuming the correctness of the rule announced in these cases, the conclusion in each is probably justified, but that rule does not obtain here. Section 8028, subdivision 5, Revised Codes, establishes the rule in this jurisdiction as follows: "In civil cases the affirmative of the issue must be proved, and when the evidence is contradictory, the decision must be made according to the preponderance of the evidence." Under this statute, fraud or lack of mental capacity may be established by a bare preponderance of the evidence. (*Gehlert* v. *Quinn,* 35 Mont. 451, 119 Am. St. Rep. 864, 90 Pac. 168.)

There is not any controversy that the burden of proof was upon plaintiff to show want of mental capacity sufficient to render him competent to enter into the settlement agreement. But upon motion of defendant for a directed verdict every fact will be deemed to be proved which the evidence offered by

plaintiff tends to prove. A case should never be withdrawn from the jury unless it follows as a matter of law that recovery cannot be had upon any view of the evidence, including the legitimate inferences to be drawn from it. (*Morelli* v. *Twohy Bros. Co.*, 54 Mont. 366, 170 Pac. 757.)

Plaintiff testified that he never accepted the offer made for a final adjustment of his claim for damages, never knowingly executed the release, and never knew of the existence of the release or of defendant's claim that final settlement had been made, until the year after his interview with the claim agents. If this testimony be true, it follows that the release, though the verisimilitude of a contract, is lacking in the substance necessary to give it life. It is elementary that to constitute a contract the minds of the parties must have met upon the same thing at the same time, or, stated differently, a contract results only from an offer made by one of the parties and its unconditional acceptance by the other in all its terms. (*Glenn* v. *S. Birch & Sons Const. Co.*, 52 Mont. 414, 420, 158 Pac. 834.) The release is not the settlement agreement, but evidence of it. It would be the only evidence of the terms of the agreement but for the fact that the validity of the agreement is in dispute. (Rev. Codes, sec. 7873.)

In view of the evidence referred to above, it was clearly for the jury to say whether the so-called settlement agreement was plaintiff's voluntary act and deed; and this was apparently the view entertained by the trial court, otherwise the release or acquittance would have formed the basis of the ruling.

It is argued, however, that even conceding that the release [7] was voidable, it was thereafter ratified, and in support of this contention defendant introduced in evidence three letters admittedly written by plaintiff after the so-called settlement agreement was signed by him, as follows, in the order of time in which they were written:

A letter (Exhibit 16) directed to Taylor, the claim agent, in which occurs the following: "And because of the understanding with you at Jamestown, *on the day that we made the*

*settlement of my claim,* I take the privilege of asking you to see that one return pass is forwarded to me, good from Jamestown to Brainard and return."

A letter (Exhibit 12) written to Dr. Ide, which contains the following passage: "I wonder if you could not arrange for me so that I could have treatment taken here by Dr. Rudell (who treated me before) or have Mr. John Taylor of the Claim Department arrange it for me to return to the hospital as he promised to do *when he and I settled.*"

A letter to Taylor (Exhibit 11) which concluded as follows: "I wrote you for a copy of the papers I signed when you paid me the $1,250 at Jamestown."

In passing upon the motion for a directed verdict, the trial court expressed the opinion that these letters absolutely decided the controversy and indicated that the ruling was based upon them alone.

If it be assumed that at the time the acquittance was signed, plaintiff was not mentally competent to enter into the contract of settlement, still if thereafter, when he was in the control of his faculties, he ratified the settlement evidenced by the acquittance, he became bound by it as fully as if it had been unavoidable in the first instance. (Sec. 4994, Rev. Codes.) [8] At first blush it might appear that these letters establish the fact that plaintiff ratified the settlement evidenced by the acquittance. "Ratification" is defined to be the confirmation of a previous act done either by the party himself or by another. (23 Am. & Eng. Ency. of Law, 889; 33 Cyc. 1529.) And a confirmation necessarily supposes knowledge of the thing ratified. (Rev. Codes, sec. 5425; *Weidenaar* v. *New York Life Ins. Co.,* 36 Mont. 592, 94 Pac. 1.) It follows that to constitute a ratification there must be an acceptance of the results of the act with an intent to ratify and with full knowledge of all the material circumstances. (*Frazier* v. *Missouri Pac. Ry. Co.,* 97 Kan. 285, 154 Pac. 1022.)

If at the time any one of these letters was written, plaintiff [9] had known the contents or effect of the release, or even

had known of its existence, he could not well contend that the reference to a settlement is not the particular settlement evidenced by the release; but he testified, as before observed, that he did not know of the existence of the release until long after Exhibits 12 and 16 were written, and that when he asked for a copy of the acquittance which the defendant claimed he had executed, his request was denied.

Whatever may be said upon the probabilities of the truth or falsity of plaintiff's version of what transpired at the meeting with the claim agents, we are not prepared to say that it is so inherently untrustworthy as that a court may disregard it as manifestly untrue. Under these circumstances, and assuming the testimony to be true, as the trial court was required to do upon motion for a directed verdict, the reference in these letters (Exhibits 12 and 16) could not have been to the settlement evidenced by the acquittance and could not have constituted a ratification, because of the lack of knowledge of the contents or existence of the contract to be ratified. The letter (Exhibit 11) written after plaintiff was informed by Bohn that the defendant claimed to have a release cannot be considered as expressing an intent to ratify the agreement. The letter in its entirety is a demand for a copy of the papers which Bohn had insisted that plaintiff had signed.

If this case had gone to the jury and plaintiff's story had been accepted as true, then the statement in every one of these letters must have been construed as a reference to the agreement as plaintiff understood it,—an agreement by the terms of which he received $900 for compensation for lost time and $350 to defray the expense of his board and care until he could return to work. In our opinion, these letters do not amount to a ratification of the agreement evidenced by the release. (*Abrahams* v. *Los Angeles Traction Co.*, 124 Cal. 411, 57 Pac. 216; *Michalsky* v. *Centennial Brewing Co.*, 48 Mont. 1, 134 Pac. 307.)

The cause should have been submitted to the jury, and for the error in directing a verdict, the judgment and order are reversed and the cause is remanded for, a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HURLY and COOPER concur.

Motion for rehearing denied January 2, 1920.