ROSEBUD STATE BANK, RESPONDENT, *v.* KESL, APPEL-
LANT.

(No. 5,171.)

(Submitted September 17, 1923. Decided October 23, 1923.)

[219 Pac. 814.]

*Banks and Banking—Checks—Directed Verdict—Error—Evi-
dence—Cross-examination—Improper Restriction.*

Banks and Banking—Check—Payment—Directed Verdict—When Error.
1.   Where in an action by a bank to recover a balance alleged due
from defendant on a check given it some five years prior to the
bringing of the action, defendant contending that the check had
been paid but after cancellation had never been returned to him,
the evidence, conflicting in character, showing *inter alia* that, though
defendant was a large depositor in the bank, the check had never
been charged to his account nor a record made of it upon plaintiff's
books, the court erred in directing a verdict in favor of plaintiff,
the showing made by defendant having been sufficient to sustain a
judgment in favor of defendant.

Trial by Jury—Directed Verdict—When Error.
2.   By statute the jury is the trier of facts in a law action, and
unless the evidence is so clear and convincing that the court would
be bound to set aside any verdict rendered contrary to it the cause
should be submitted to the jury.

Trial—Witnesses—Cross-examination—Improper Exclusion.
3.   In an action by a bank against one of its depositors to recover
on a five year old check, in which the accuracy of its books was
directly involved, refusal to permit one of its witnesses, who had
testified that he had examined the books in company with the bank
examiner, to answer the question asked him on cross-examination
whether such examination had included defendant's account and
whether he had not found a shortage of $17,000, was reversible error.

Same—Witnesses—Cross-examination—Rule.
4.   The right of cross-examination is a substantial one and should
not be unduly restricted, but the fullest scope should be allowed to
the end that the jury may be advised of all facts having a legitimate
bearing upon the issues presented.

*Appeal from District Court, Rosebud County; Stanley M.
Felt, Judge.*

ACTION by the Rosebud State Bank against Joseph Kesl.
Judgment for plaintiff and defendant appeals. Reversed
and remanded.

*Mr. Frank Hunter* and *Mr. Will Truscott,* for Appellant, submitted a brief; *Mr. William Scallon,* of Counsel, argued the cause orally.

*Messrs. Campbell & Carolan,* for Respondent, submitted a brief.

MR. JUSTICE STARK delivered the opinion of the court.

This is an action brought by the plaintiff, a state banking corporation, to recover from the defendant a balance alleged to be due on a check for $5,356.65 given to the plaintiff bank by the defendant on November 20, 1914.

The complaint, after alleging the making and delivery of the check, sets out that defendant at the time was indebted to the Bankers' Loan & Mortgage Company, of Billings, on a note in an amount equivalent to the face of the check, and that the check was given to the plaintiff for the purpose of enabling it to pay this note for the defendant, and that it did so, but that defendant had never paid to plaintiff the amount of the check, although demand therefor had been made. It is further alleged that on the eighteenth day of March, 1921, the defendant had on deposit in the plaintiff's bank the sum of $2,250.34, which amount on that day the plaintiff credited upon the check; that the amount due upon the check at the time of making the credit, computing interest thereon at eight per cent per annum from its date, was $8,039.72, and after applying the credit there remained a balance of $5,789.38, for which sum, with interest, plaintiff asked judgment.

The defendant's answer denied generally and specifically all the allegations of the complaint, and by way of counterclaim alleged that on March 18, 1921, the plaintiff was indebted to him in the sum of $2,250.34; that he had demanded payment of the same, which had been refused, and prayed for judgment against plaintiff for that amount with interest. The allegations of the counterclaim were denied by plaintiff's reply thereto.

After plaintiff and defendant had rested, counsel for plaintiff moved the court to direct the jury to return a verdict in its favor on the grounds: (1) That under the evidence the allegations of the plaintiff's complaint stand admitted, for that it appears from the uncontradicted evidence in the case that the check sued upon is the check of the defendant; that it is the property of plaintiff, and has not been paid, except by the application upon it of the balance standing to the credit of defendant on plaintiff's books on March 18, 1921; (2) that no evidence has been offered which proves that any moneys or funds belonging to defendant have been misappropriated or misapplied by plaintiff; (3) that no proof has been offered which in any manner shows the condition of defendant's account with the bank at the time of the issuance and taking of the check. This motion was sustained, but in passing upon it the court held that plaintiff was only entitled to interest on the amount of the check from the time demand for payment of the same was made on March 18, 1921, and so directed a verdict in plaintiff's favor for $3,354.81, for which amount judgment was entered against the defendant. Defendant moved for a new trial, which was denied, and has appealed to this court from the judgment.

1. Defendant's first specification of error is that the court [1] erred in sustaining plaintiff's motion for a directed verdict; hence it is necessary to examine the testimony introduced at the trial in detail.

To sustain its case the plaintiff produced as a witness W. L. Kennedy, who testified that he was assistant cashier of plaintiff bank and had been such since the fall of 1911; that in the absence of the cashier he acted as general manager thereof, and that one W. J. Wallin had been cashier of the bank from 1911 down to the spring of 1919. Referring to the transaction in question Kennedy testified that the defendant had been a good customer of the bank for a long time prior to November 20, 1914, and on that day came into the bank with a statement from the loan company, showing the amount due on his note,

saying he wanted to pay it and that the bank had in its possession a certificate of deposit for that amount, which he had left there for safekeeping and that it should put the amount of that certificate to his credit on his open account and take up the loan company's note, and then issued the check in question to accomplish this end; that he (Kennedy) was unable to find the certificate of deposit mentioned by Kesl; that Wallin, the cashier, was away at the time and he (Kennedy) "presumed that he might have the certificate and knew where it was"; further that he did not charge the check to Kesl's account, but merely held it until Wallin returned a few days later. Continuing, the witness said that when Wallin returned "he [Wallin] was not able to produce the certificate which had been referred to by Mr. Kesl"; that Kesl never surrendered the certificate of deposit to the plaintiff, but that later it came to the bank from one of its correspondents bearing the indorsement of defendant and another party, and that under the banking custom the plaintiff was obliged to pay it; so that it never was cashed and placed to the defendant's credit on his open account.

In connection with the direct examination of this witness, statements from the bank's books were introduced showing the defendant's account therewith from January 31, 1914, when he had a balance of $804.06 to his credit, down to March 18, 1921, on which date he had a balance of $2,250.34, which was the amount plaintiff applied on the check. These statements show that during this period defendant's account was credited with thirty-seven different items of deposit, totaling $22,828.87, which, added to his balance of $804.06 on January 31, 1914, gave him a total credit during that period of $23,632.93, against which were charged withdrawals by upwards of one hundred checks, amounting to $21,382.59. The deposits ranged in amount from $7.80 to $3,075, and the withdrawal checks from $1.45 to $3,281.25. The balances show a spread between an overdraft of $2,678.07 on October 15, 1914, to a credit balance of $3,379.29 on April 12, 1919. On

November 12, 1917, the defendant's balance was $2,130.58, and from that time down to March 18, 1921, was not below $1,000 on any date except on August 18, 1918, when it was reduced to $268.12, where it remained until September 27 following, when it was increased to $1,432.34, the average balance to defendant's credit during this whole period of time being in the neighborhood of $1,660.

On his cross-examination this witness testified that the only time he ever spoke to Kesl about the check was at the latter's ranch in the month of March, 1921, when Kesl claimed that he did not owe it because there should have been money in the bank to pay it at the time the check was issued. Referring to the $5,000 certificate of deposit, on the strength of which he had testified he had accepted the check in question he said: "I don't remember whether he said it was in the bank or he said that Wallin had it. I believe he said Wallin had it. Kesl said the certificate of deposit was for $5,000, but whether or not Joe [Kesl] had this $5,000 certificate of deposit in his pocket at the time I don't know. I don't remember whether he had it with him in the bank at the time he signed the check; I didn't ask him."

On behalf of the plaintiff, J. R. Middleton testified that he had been cashier of the plaintiff bank since June, 1919; that in the fall of 1919 he made a demand upon the defendant for payment of the check which was refused, and on cross-examination said that at the time demand was made Kesl insisted that he did not owe the bank anything. Further, on cross-examination he said that he had gone over the statements in Kesl's account and everything pertaining thereto and audited what he had found; that he "made a minute, detailed examination of the records as to the condition of the bank generally with the bank examiner," whereupon the following question was asked: "Q. That would include the Kesl records? The fact is you found $17,000 shortage, didn't you?" This question was objected to on the ground that it

was not proper cross-examination, and the objection was sustained.

In his own behalf the defendant testified that he was eighty years old and could neither read nor write. Leading up to the circumstances of giving the check in question and making provision for its payment, he said he had been down to Billings and ascertained that he owed the loan company $5,356.65; that he had had money placed in the bank to pay the check nearly two months before that time; that in addition to about $2,000 to his credit on open account he had turned into the bank two certificates of deposit, one for $4,000 and one for $3,000, issued to him by the bank and which had been drawing interest for about eight months; that when he turned those two certificates of deposit into the bank he had another one for $5,000 which was not turned in. Further on defendant testified: "To find out what became of that check— the next year after that check had been issued in the bank * * * I lost that check. I asked him what was done with the check. Mr. Wallin says, 'You got it. * * * ' I asked Mr. Wallin what he had done with the check. He says, 'You got it.' I say, 'I not got it.'" These statements were reiterated by defendant, and he said: "He never gave that check to me. Then I came to look where that check disappeared." The record affirmatively shows that Wallin was present at the trial of the case as a witness, but he was not called upon to testify; hence there was no denial of the above statements alleged to have been made by him. The defendant had no witness other than himself.

In rebuttal the witness Kennedy testified that the bank kept a book known as the register of certificates of deposit, which he produced and said it was the one which had been used during the entire time defendant maintained an account with the bank and showed all of the certificates of deposit issued, paid or renewed, and from this record testified that the first certificate of deposit issued by the bank to the defendant was one for $3,201.62, dated December 31, 1912;

that this was renewed on January 2, 1914, for $3,000 and the balance credited to defendant's account; that this certificate of deposit was paid on November 5, 1914, by crediting defendant's account with the sum of $3,075, which testimony is followed by a statement of the witness: "There was no other certificate of deposit outstanding issued by our bank in the hands of Mr. Kesl on that date."

The above is a substantial statement of all the evidence in the case.

By statute the jury is the trier of facts in causes of this [2] character, and unless the evidence is so clear and convincing that the court would be bound to set aside any verdict rendered contrary to it the cause should be submitted to the jury. (*Bean* v. *Missoula Lumber Co.*, 40 Mont. 31, 104 Pac. 869.) The circumstances of this case detailed in the evidence are quite unusual. According to plaintiff's contention, the defendant, who carried a considerable bank account with it for a long term of years, gave it a check for upward of $5,000, on the strength of which it paid out a like amount for the defendant. Plaintiff claims that defendant agreed to turn in a certificate of deposit to cover the amount of the check, but did not do so; yet plaintiff made no effort to get it. Plaintiff carried the check for five years before making any demand for its payment, and, when demand was made, met with a flat denial of any liability thereon by the defendant, and then delayed nearly another two years before taking any steps whatever to bring about a settlement. During all the years that plaintiff held the check, defendant was a large depositor of money with it; yet the check was never charged to his account, and, so far as disclosed, no record was ever made of it upon the books of the bank.

If what the defendant stated to explain this unusual situation was correct; if his statement that he had turned over to the bank certificates of deposit aggregating $7,000 to take care of the check in question before the same was issued, was true—then he had made a complete defense to the plaintiff's

cause of action. It cannot be said as a matter of law that these statements were not true. Defendant's statement that the year following the issuance of the check he had missed it from the checks returned to him by the bank, and that when he inquired about it from Wallin, the cashier, the latter asserted that the defendant had it; the failure of Wallin, to whom the statement was attributed, to deny the same, although present at the trial as a witness; the affirmative showing by plaintiff that, all during the nearly seven years from the time the check was issued until it sought to enforce payment of the same, defendant was a large depositor in its bank, and that it never charged the check up to his account and apparently never made any record of the check upon its books—were all matters which could properly have been considered by the jury in determining on which side the truth lay. There was a substantial conflict in the testimony, and a judgment in favor of defendant upon the showing made would have been sustained by the evidence. The case should have gone to the jury, and the court erred in sustaining the plaintiff's motion for a directed verdict.

2. The court should have allowed the witness J. R. Middle-[3] ton to answer the question propounded to him on cross-examination which is quoted in his testimony. The witness had just testified to the fact that he had made a detailed examination of the plaintiff's books in company with the bank examiner. The accuracy of the bank's books was directly involved in the case. If the answer to the question had disclosed that a shortage of $17,000 was, in fact, discovered in the course of the examination of the books, further inquiries might have shown a connection between this shortage and the certificates of deposit which the plaintiff claimed to have turned in. "The right of cross-examination is a substantial [4] one, and should not be unduly restricted, but the fullest scope should be allowed to the end that the jury may be advised of all facts having a legitimate bearing upon the issues presented." (*Moss* v. *Goodhart*, 47 Mont. 257, 131 Pac. 1071.)

For the reasons above indicated, the judgment is reversed and the cause remanded to the district court, with directions to grant defendant a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.