WINGATE, APPELLANT, *v.* DAVIS, SHERIFF, ET AL.,
RESPONDENTS.

(No. 5,972.)

(Submitted November 16, 1926. Decided December 11, 1926.)

[252 Pac. 307.]

*Conversion — Livestock — Sheriffs—Official Bonds—Sureties—
Statute of Limitations—Statutes and Statutory Construction
—Directed Verdict—When Improper—Trial—Cross-examina-
tion—Rebuttal—Erroneous Exclusion.*

Conversion—Action Against Sheriff and Surety on Official Bond—Stat-
ute of Limitations.
    1. An action for conversion against a sheriff and the surety on
his official bond, being on a liability incurred "by the doing of
an act in his official capacity and by virtue of his office," must be
brought within three years under subdivision 1, section 9031,
Revised Codes of 1921.

Statutory Construction—Adoption of Statute from Foreign State—Rule
of Construction.
    2. Where a statute adopted from another state is silent as to the
construction to be placed upon it, that placed thereon by the
courts of the foreign state prior to its adoption will be deemed
to have been impliedly approved.

Trial—Directed Verdict—When Improper—Appeal.
    3. A court should not direct a verdict in favor of defendant unless
it follows as a matter of law that recovery cannot be had upon
any view of the evidence, and on appeal every fact will be deemed
proved which the evidence offered by plaintiff tends to prove.

Conversion—Directed Verdict—Error.
    4. Under the above rule (par. 3), *held*, that the court erred in
directing a verdict at the close of all the evidence in favor of
defendant sheriff and the surety on his official bond, in an action
for the conversion of livestock.

Same—Livestock—Evidence—Admissibility.
    5. Exclusion of testimony offered by plaintiff mortgagee and pur-
chaser at foreclosure sale of livestock in an action for their con-
version by the sheriff, going to the question of his ownership and
deraignment of title, was error.

Same—Evidence—Cross-examination—Erroneous Exclusion.
    6. Where a witness for defendant sheriff in an action for conver-
sion had testified that the cattle in controversy were his, questions
asked on his cross-examination as to their description, as to
whether he obtained a bill of sale when he bought them, as to

---

2. See 25 R. C. L. 1069.
3. See 26 R. C. L. 1067.

[77 Mont. 572.]

their rebranding, the consideration paid and as to his taking possession, were pertinent to the issues and calculated to test the accuracy of his statements made in his examination in chief, and their exclusion was error.

Evidence—Impeachment of Witness—Rebuttal—When Proper.

7. Where a witness who had been asked on cross-examination whether at a previous trial he had not given certain testimony replied that he did not remember, exclusion of an offer to prove on rebuttal by a witness who had heard him testify on that occasion that he did so testify was error under section 10669, Revised Codes of 1921.

---

[1] Sheriffs and Constables, 35 **Cyc.**, p. 1797, n. 75.
[2] Statutes, 36 **Cyc.**, p. 1156, n. 83.
[3] Trial, 38 **Cyc.**, p. 1565, n. 77; p. 1567, n. 97.
[4] Sheriffs and Constables, 35 **Cyc.**, p. 1850, n. 7.
[5] Sheriffs and Constables, 35 **Cyc.**, p. 1840, n. 86.
[6] Witnesses, 40 **Cyc.**, p. 2489, n. 1.
[7] Witnesses, 40 **Cyc.**, p. 2708, n. 62.

---

*Appeal from District Court, Valley County; Carl D. Borton, Judge.*

ACTION by L. C. Wingate against Floyd Davis, as Sheriff of McCone County, and another. Judgment for defendants and plaintiff appeals. Reversed and remanded.

*Messrs. Hurd, Rhoades & Hallett,* for Appellant, submitted a brief; *Mr. E. J. McCabe,* of Counsel, argued the cause orally.

*Messrs. Hurley & O'Neill,* for Respondents, submitted a brief; *Mr. C. C. Hurley* argued the cause orally.

HONORABLE HENRY G. RODGERS, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, absent on account of illness, delivered the opinion of the court.

This action was instituted to recover damages from Floyd Davis, as sheriff, and the Fidelity & Deposit Company of Maryland, surety on his official bond. Upon the trial, at the close of all the evidence, the court sustained defendants' motion for

---

. **7.** See 28 **R. C. L.** 639.

a directed verdict, and judgment was entered. Plaintiff's motion for a new trial being overruled, he appeals from the judgment.

It is alleged in the complaint that "On or about the fourteenth day of December, 1921, the defendant Floyd Davis, acting in his official capacity, and in virtue of and under color of his office as such sheriff of McCone county, Montana, but without right or authority in law or otherwise, and well knowing that plaintiff was the owner and entitled to said cattle above described, * * * took said twenty head of cattle and all thereof from the possession of the plaintiff, and converted the same to his own use." Defendants in their answer affirmatively pleaded that plaintiff's cause of action was barred under certain provisions of our statute.

The act complained of by plaintiff is alleged to have taken [1] place on December 14, 1921, and this action was commenced March 18, 1924, well within the three-year period as provided by section 9031, Revised Codes of 1921, which reads: "Within three years: 1. An action against a sheriff, * * * upon a liability incurred by the doing of an act in his official capacity and in virtue of his office," *etc.* Since this is an action against a sheriff and his surety upon a liability incurred by the "doing of an act in his official capacity and in virtue of his office," it comes within the provisions of this statute. (*Paige* v. *Carroll,* 61 Cal. 211; *Woodham* v. *Cline,* 130 Cal. 497, 62 Pac. 822; *Dennison* v. *Plumb,* 18 Barb. (N. Y.) 89; *Hill* v. *White,* 46 App. Div. 360, 61 N. Y. Supp. 515; *Bishop* v. *McGillis,* 80 Wis. 575, 27 Am. St. Rep. 65, 50 N. W. 779.) Furthermore, "by the adoption of the statute of another state, [2] the construction theretofore placed hereon by the courts of such state is impliedly approved, provided our own statute is silent as to the matter of construction." (*State ex rel. Rankin* v. *State Board of Examiners,* 59 Mont. 557, 197 Pac. 988, and cases there cited.)

The law of California differs from ours only in that the time for the commencement of an action upon a liability created by statute, or for taking, detaining, or injuring any goods or chattels, is three years, and against a sheriff upon a liability incurred by the doing of an act in his official capacity and in virtue of his office, is two years. Before the adoption of these provisions by our legislature, the supreme court of California, in *Paige* v. *Carroll, supra,* an action against a sheriff and his sureties upon his official bond to recover damages for the seizure and sale of personal property under a writ of attachment, held that the provision of the section limiting the time for the commencement of an action against a sheriff for acts done in his official capacity and in virtue of his office is controlling.

Plaintiff's contention, briefly stated, is that he purchased certain cattle at a foreclosure sale on the fifth day of December, 1921, held by virtue of chattel mortgages given by Roy Decker to the First National Bank of Wolf Point, and that thereafter, in a claim and delivery suit wherein Mike Tabat was plaintiff and the First National Bank of Wolf Point and John Erickson, its agent, were defendants, the defendant Floyd Davis, as sheriff, and while the plaintiff was the owner and entitled to possession of the cattle, took possession thereof and converted them to his own use.

In considering the question whether the court rightly [3, 4] directed a verdict, we will apply the rules that the case should not have been withdrawn from the jury "unless it follows as a matter of law that a recovery could not be had upon any view of the evidence, including the legitimate inferences to be drawn from it," and "every fact will be deemed to be proved which the evidence offered by plaintiff tends to prove." (*Koerner* v. *Northern Pac. Ry. Co.,* 56 Mont. 511, 186 Pac. 337; *Johnson* v. *Chicago, M. & St. P. Ry. Co.,* 71 Mont. 390, 230 Pac. 52.)

The description given of the cattle in the complaint is twenty head of cattle consisting of nine cows and three steers

branded V bar lazy 3 on right shoulder; also, two black bull calves, four heifer calves, one black yearling heifer and one black yearling steer. The plaintiff testified: "On the thirteenth day of December, 1921, I was the owner of twenty head of cattle, consisting of nine cows and three steers branded V bar lazy 3 on the right shoulder, two black bull calves, four heifer calves, one black yearling heifer, and one black yearling steer. I obtained possession of these cattle at the Decker foreclosure sale. This sale was held by John Erickson, as agent for the First National Bank of Wolf Point, at the Ray Decker farm, on November 25, 1921, and I bid in the cattle; they were struck off to me. After I obtained possession of those cattle, I turned them over to Mr. Erickson and made some arrangements with Mr. Groh to keep them until they could be taken out of there. I decided to send them down to the farm at Sidney. At the time the mortgage was foreclosed the cattle were in Decker's possession. The sheriff never delivered any of the cattle to me, never paid for or delivered any of the cattle to me, never paid for or delivered any of them, and I never received the cattle from anybody else or any part of them. I never authorized the sheriff to take the cattle or any of them. The brand called V bar lazy 3 was denominated the Roy Decker brand."

Erickson, witness for plaintiff, testified: "I foreclosed a certain mortgage in the fall of 1921 for the First National Bank, executed to the bank by one Roy Decker, and I took possession of certain cattle described in the mortgage as the cattle of Roy Decker. I know and am familiar with the cattle involved in this action. I took possession of them, among others, under these certain mortgages. After Mr. Wingate had purchased these cattle he turned them over to me to see that they were properly taken care of. I hired Mr. Tony Groh to look after them and take care of them until such time as I could make arrangements to bring them to Ritchie and ship to Sidney. I went out later to take the cattle to Sidney. I think that was

about the fourteenth day of December. I did not take the cattle involved in this action, because they were in the possession of the under-sheriff. At that time I was acquainted with Ed. Payne. He was under-sheriff and Floyd Davis was the sheriff of McCone county, Montana. At that time I had a conversation with Ed. Payne. When Ed. rode up, I told him I came over to get them cattle. He said I was not going to get them because he had them in his possession, and then he handed me a copy of some legal proceedings. That is the paper handed me by Sheriff Ed. Payne at the time I just testified to when he told me he had possession of the cattle and I could not have them. (Document introduced in evidence; it shows on its face that it is an affidavit, demand, and undertaking on claim and delivery of personal property in the case of Mike Tabat *v.* First National Bank of Wolf Point, Montana, a corporation, and John Erickson, its agent.) From my examination at that time, the cattle involved in this action, which is described as twenty head of cattle, consisting of nine cows and three steers branded V bar lazy 3 on the right shoulder, two black bull calves and four heifer calves, and one yearling heifer and one black yearling steer, were included in the bunch of cattle that was taken possession of by Mr. Ed. Payne on that day, as deputy sheriff. Subsequent to the rendition of the judgment in the action of Mike Tabat *v.* First National Bank of Wolf Point and Others, and on the same day in company with Mr. Wingate I had a conversation with Mr. Floyd Davis with reference to the cattle involved in the present action. Mr. Wingate asked him if he was going to let him have the cattle; he said he had a bond up that protected him, he was not going to let loose.''

Listug, a witness called by plaintiff, testified: ''Some time during the month of September or October, 1922, I had a conversation with Floyd Davis. I told Mr. Davis that I was informed that some of those cattle involved in the action have

been sold, disposed of by Mr. Tabat, and I think you are stuck under your bond, and I have information that the bond is only about $700, and you had better get a bigger bond for your own protection, and Mr. Davis thanked me and said he had made a mistake by letting those cattle be split up while they were in his possession and he would attend to the matter of the bond. I was present at the trial of the action of Mike Tabat *v.* First National Bank of Wolf Point and heard Mr. Ed. Payne testify with reference to the cattle he had taken, and he stated that he had taken the cattle, and he described them, and in doing so he described the cattle. described in this action.''

Plaintiff's Exhibit No. 5, introduced in evidence, is a certificate of the general recorder of marks and brands, showing that under date of December 13, 1921, the V bar lazy 3 brand for cattle on right shoulder was recorded in the name of Roy Decker, and had been formerly recorded on May 28, 1912.

The evidence as to the market value of the cattle was properly admitted, and the weight to be given it was a question for the jury to consider.

The foregoing excerpts from the evidence are sufficient to show that the cause should have been submitted to the jury.

The court sustained the objections of defendants to the [5] questions propounded to the plaintiff as to his investigation as to the cattle owned by Decker, and his examination of the cattle in Decker's possession prior to the giving of the mortgages to the bank and prior to the foreclosure sale. The witness had already testified that as an officer of the bank he had taken one of the mortgages. Any evidence going to the question of plaintiff's ownership was material. Plaintiff was entitled to deraign his title, and the witness should have been permitted to answer.

Tabat, a witness for the defendants, testified on direct ex-[6] amination that some of his cattle had been taken by the

bank; that he afterward found the cattle; that the only con-
nection Ed. Payne, the deputy sheriff, had with the taking of
the cattle by the witness, was that the witness asked him to
help cut out some strays; that he had started a suit against
the bank for the cattle; and that they belonged to him. On
cross-examination the court sustained the objections of the de-
fendants to several questions asked the witness as to the de-
scription of the cattle, how they were sold at the sale at which
he claimed to have bought them, as to his having secured a bill
of sale, as to the rebranding of the cattle, the consideration, if
any, paid by him, and as to his taking possession of the cattle
by reason of his action then pending against the bank. All
these questions were pertinent to the issues, were calculated
to test the accuracy of the statements made by the witness as
to how he secured possession of the cattle and his ownership
thereof, and, if answered, would have tended to enlighten the
jury on the question in controversy. The objections should
not have been sustained. (*Rosebud State Bank* v. *Kesl*, 68
Mont. 518, 219 Pac. 814; *Cuerth* v. *Arbogast*, 48 Mont. 209,
136 Pac. 383; *Moss* v. *Goodhart*, 47 Mont. 257, 131 Pac. 1071;
*Cobban* v. *Hecklen*, 27 Mont. 245, 70 Pac. 805.)

On cross-examination the witness Tabat was asked if he had
[7] not at the trial of his case against the bank testified in
reference to the cattle involved as follows: "Q. How were they
branded? A. The brand was V bar lazy 3 or reverse 3.
Q. How many were branded that way—twelve?" To which
he replied that he did not remember he made such a state-
ment. In rebuttal the plaintiff offered to prove by the wit-
ness Erickson, then on the witness-stand, that he was present
at the trial of Tabat against the bank and heard the testi-
mony of Tabat, and that Tabat had been asked the questions
and made the answers as above stated. The court sustained
an objection to this offer. Under the provisions of section
10669, Revised Codes of 1921, this evidence should have been
received.

We find no other errors in the record. The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.