FLAVIN, RESPONDENT, *v.* CHICAGO, BURLINGTON & QUINCY RAILROAD CO., APPELLANT.

(No. 2,976.)

(Submitted April 8, 1911.   Decided April 22, 1911.)

[115 Pac. 667.]

*Railroads—Carrier and Passenger—Ejection from Train—Action for Damages—Excessive Verdicts.*

Appeal and Error—Review—Verdict—Conflicting Evidence.
   1.   A verdict on conflicting evidence will not be reversed on appeal as contrary to the weight of the evidence, after the trial court has overruled a motion for a new trial.

Carriers—Damages—Excessiveness—Personal Injuries.
   2.   Plaintiff claimed that, on account of being ejected from defendant's passenger station while waiting for a train, he contracted a severe cold, which settled in his stomach, turned into neuralgia and pleurisy, and left him permanently injured; that since his injury he had suffered great pain, and had been hindered from carrying on his work. His physician testified that his condition was due to exposure; that he was suffering from chronic pleurisy, and would get worse, rather than better; and that this condition could be caused by getting wet and cold. *Held,* that a verdict allowing plaintiff $2,500 was not excessive.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by William Flavin against the Chicago, Burlington and Quincy Railroad Company. Judgment for plaintiff, and defendant appeals from it and an order denying it a new trial. Affirmed.

*Mr. O. F. Goddard,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Breen & Jones* submitted a brief in behalf of Respondent. *Mr. Peter Breen* argued the cause orally.

MR. JUSTICE SMITH delivered the opinion of the court.

The complaint in this action alleges that on the 24th day of July, 1908, the plaintiff purchased from the defendant corporation a ticket entitling him to ride from Yuma, in the state of Colorado, to Crawford, in the state of Nebraska, over the defendant's railroad; that defendant then and there undertook to carry him from Yuma to Crawford upon its next passenger train, at the usual time of departure of said train, which was 4:10 o'clock in the morning; "that plaintiff undertook then and there to wait in defendant's depot in the waiting-room thereof, and waited therein from the time of his arrival and purchase of said ticket for about one hour for the arrival of said train, when said train was reported by defendant to be one hour late, and thereafter no further report was made by the defendant to the plaintiff as to the time when said train would arrive at Yuma; that said town of Yuma is a small place, having but one hotel, situated about four blocks from the depot, and that there was in said town no other place of accommodation or shelter for strangers; that plaintiff left said hotel immediately before buying said ticket; that the hotel was then and there closed and remained closed for the night; that about 4:30 o'clock in the morning of said day the defendant wrongfully and unlawfully, and against the protest of plaintiff, threw all of plaintiff's baggage out of the depot, and expelled and ejected him therefrom, and locked all the doors thereof and put out all the lights therein; that said night was very cold, and the plaintiff was thinly clad, and there was no

other place of shelter or accommodation which plaintiff could have used while waiting for said incoming train, and there was no means of removing his baggage to such place of shelter, had there been any, and returning it to the depot, in order to put it on said train when it arrived, and that, without any fault or negligence on plaintiff's part, he was then and there, by the wrongful acts of defendant in expelling him from said depot waiting-room, and compelling him to wait around and near said depot till the arrival of his said train, exposed to the darkness and discomfort and cold then and there existing, to-wit, from the time of his said expulsion from said depot, till 6 o'clock in the morning of said day, and that all the facts mentioned in the foregoing paragraphs of this complaint were well known to the defendant." It is then alleged that by reason of the premises plaintiff was "then and there greatly hurt, bruised, and wounded, and became and was sick, sore, and lame, and disordered, and seized with a violent and severe cold and fever, which settled in his stomach and turned into neuralgia and pleurisy of his side and stomach, and was, as he believes, permanently injured, and since said injury and up to the present time the plaintiff has suffered great pain, and has been and is hindered and prevented from carrying on his work as a miner, and was otherwise greatly injured and damaged." The answer puts in issue the material allegations of the complaint.

The trial resulted in a verdict for the plaintiff in the sum of $2,500. Judgment was entered on the verdict, and from that judgment and an order denying its motion for a new trial, the defendant has appealed to this court.

The plaintiff testified that, having spent a part of the night at a small hotel in Yuma, Colorado, he and his wife arose about 3 o'clock in the morning, went to the station of the defendant company, and asked the agent when the train would leave for Crawford, Nebraska. The agent told him the train was ten minutes late, and that the schedule time for leaving was 4:10. About fifteen minutes later plaintiff's wife inquired about the train, and the agent told her that it was an hour late. About 4:30 o'clock the agent came to the plaintiff and his wife in the wait-

ing-room, said that his time of service expired at 4:30, and insisted that they should leave, as he was about to lock up and go away. Plaintiff requested permission to stay in the waiting-room, which the agent refused. He and his wife thereupon left the waiting-room and went upon the platform, where they remained until about 6 o'clock, when the train arrived. During this time it rained very hard and became very cold. Plaintiff was saturated with water and took a severe cold. From that time on the disease of which he now complains developed and grew worse.

Plaintiff was corroborated in all of his testimony by his wife. They both swore that it rained very hard during the afternoon of July 23 while they were at Yuma, but that the weather generally was exceedingly warm. They also swore that the reason they could not go to the east side of the depot platform, which was sheltered, after they were compelled to leave the waiting-room, was because there were five tramps in the place, who were using such vulgar and obscene language that Mrs. Flavin could not remain in their vicinity. They also declared that the hotel was closed, and that they could not return to it. The plaintiff also testified that some time after 5 o'clock in the morning Mr. Pate, the day agent of the Burlington Road, came down from his apartments over the waiting-room, and was requested to open the waiting-room and allow the plaintiff to enter, but that he refused, saying that he did not go on duty until 7 o'clock.

Dr. McCarthy testified for the plaintiff in substantiation of his claim that his present condition is due to exposure to which he was subjected on the night in question. The doctor testified that he was suffering from a condition of chronic pleurisy, and that he would get worse, rather than better. The doctor said, "It is permanent, progressive. It will get worse. It will get worse as age advances. It is progressive in character; it will get worse. This condition could be caused by cold. It could be caused by getting wet and cold."

On the part of the defendant, many seemingly disinterested witnesses were produced who contradicted categorically almost every material fact testified to by the plaintiff and his wife.

The night agent or operator denied that he compelled the plaintiff to leave.the waiting-room. He said that the night was warm and balmy, and the plaintiff and his wife spent the time after their arrival sitting on a bench outside of the waiting-room; that he was about to leave at 4:30 o'clock, and informed them that his time of service had expired, talked pleasantly with them, and that they made no objection whatsoever to his closing the waiting-room. Many citizens of the little town of Yuma testified that no rain fell, either on the afternoon of July 23 or the following night. They all agreed that the weather was very warm, clear, and pleasant. Both the night agent, Mr. Huston, and the day agent, Mr. Pate, testified that the night was so warm that a small child of the latter, sixteen months old, which was being weaned at the time, spent the night in a go-cart on the platform, without any other clothing than a thin nightgown. There was testimony to the effect that the hotel was open all night. Dr. Witherspoon was called as a witness for the defendant, and testified that in his judgment the plaintiff was suffering from an obstruction of the gall bladder, caused by gallstones.

There are but two assignments of error argued in the brief of appellant. The first is that the evidence is insufficient to justify the verdict, and the second is that the verdict is excessive. We have carefully examined the testimony. As shown by the brief summary heretofore given, it is sharply conflicting. While the members of this court, had they been called upon to try the cause in the first instance, might (and the writer of this opinion assuredly would) have determined that the great weight of the testimony was in favor of defendant's contentions, still the questions involved were primarily for the jury to decide; and, as there was testimony on the part of the plaintiff and his wife to justify the findings of the jury, we may not substitute our judgment for theirs. It is difficult to see how this jury, in the light of the testimony of the many apparently disinterested witnesses called by the defendant, could conclude that any rain fell upon the plaintiff on the night in question, or that he was subjected to any hardship, or even inconvenience, on account of the weather. But the jury must have so determined, and must have

based their verdict solely upon the testimony of Flavin and his wife.

As the question of the credibility of these witnesses was [1] entirely for that body to decide, their determination is conclusive upon this court, particularly since the same has been ratified by the district court in overruling a motion for a new trial. (*Murphy* v. *Cooper*, 41 Mont. 72, 108 Pac. 576.)

The same may be said as to the testimony relating to the extent of plaintiff's injuries. Assuming that the evidence of Dr. McCarthy as to his present condition is .true, that alone would [2] not justify the amount of the verdict, were it not for the fact that the plaintiff and his wife both testified that prior to the alleged exposure the plaintiff was in good health. If this testimony is to be given any consideration, then the verdict is not excessive.

It is claimed on the part of the learned counsel for the appellant that a great injustice was done the defendant by the jury. But, so long as we adhere to the jury system and give effect to those uniform rules which must be observed in the determination of appeals, this court is not in a situation to listen to counsel's appeal.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.