KNUCKEY, RESPONDENT, *v.* BUTTE ELECTRIC RY. CO. ET AL., APPELLANTS.

(No. 3,080.)

(Submitted February 15, 1912.  Decided February 29, 1912.)

[122 Pac. 280.]

*Personal Injuries—Street Railways—Carrier and Passenger— Complaint—Amendments—Variance—Judicial Notice—Cross- examination—Contributory Negligence—Instructions—Exces- sive Verdicts.*

Personal Injuries—Complaint—Amendments.
  1.  A complaint, in a personal injury action, which had been amended after reversal of judgment in favor of plaintiff, examined and *held* not to be objectionable as stating a new cause of action.
Variance—Prejudice.
  2.  No variance is to be deemed material unless it has actually misled the adverse party to his prejudice.
Evidence—Judicial Notice.
  3.  Courts will take judicial notice that it is the common practice, in indicating a wish to alight from a street-car, to use the name of the street alone, without other words or the addition of the word "street."
Street Railways—Injuries to Passenger—Question for Jury.
  4.  In an action for injuries to a passenger, caused by being thrown from a street-car when he was about to alight, whether the motorman heard the name of the street which he pronounced was a matter for the jury to determine from all the facts and circumstances.
Trial—Cross-examination—Scope.
  5.  Courts should allow the fullest scope for cross-examination of witnesses, to the end that the jury may be advised of all facts having a legitimate bearing upon the issues presented.

Same—Showing Purpose of Cross-examination.
6. It is the duty of counsel to make the record show prejudicial error, so that, where an objection is made to a question on cross-examination, a reasonable effort should be made to advise the court of the object with which the question was asked.

Same—Witnesses—Pecuniary Interest.
7. Permitting a witness to testify that he had not any expectation of getting a reward for his testimony, if error, *held* harmless.

Street Railways—Passengers—Injuries—Jury Questions.
8. Whether the motorman of the car from which plaintiff was thrown heard him pronounce the name of his street, and whether, in response thereto, he decreased the speed at which it was running, were questions for the jury to decide.

Same—Contributory Negligence—Jury Question.
9. The question whether plaintiff was guilty of contributory negligence was one for the jury, and its verdict, ratified by the district court in overruling a motion for a new trial, in favor of plaintiff is conclusive upon the supreme court in this respect.

Same—Instructions—Modification.
10. In an action for injuries to a passenger on a street-car, the modification of a request to charge that the plaintiff could only recover by proving the "specific" allegations of his complaint relating to negligence by striking out the word "specific," *held* not error, where the court also clearly defined the issues to be determined and instructed the jury that the material allegations must be proven by a preponderance of evidence.

Same—Excessive Verdict.
11. Where a plaintiff, in an action for injuries from being thrown from a street-car, lost all the toes from one of his feet, causing a permanent and painful injury, but one which did not interfere with his work, a verdict of $10,000 *held* excessive and reduced to $6,000.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by Frank Knuckey against the Butte Electric Railway Company and another. From a judgment for plaintiff and an order denying a new trial defendants appeal. Remanded, with directions.

*Mr. George F. Shelton, Mr. Peter Breen,* and *Mr. Charles A. Ruggles,* for Appellants, submitted a brief; *Messrs. Shelton* and *Breen* argued the cause orally.

In behalf of Respondent, there was a brief by *Messrs. Maury & Templeman,* and *Mr. J. O. Davies;* oral argument by *Messrs. Maury* and *Davies.*

MR. JUSTICE SMITH delivered the opinion of the court.

This is the second time this case has been before the court. (See *Knuckey* v. *Butte Electric Ry. Co.*, 41 Mont. 314, 109 Pac. 979.) After *remittitur* filed in the district court, the plaintiff amended his complaint so as to charge as follows: "That while plaintiff was such passenger, and before the said car reached his aforesaid destination, plaintiff notified the defendants that he wished to get off the car at the crossing of the aforesaid streets, Warren and West Galena; that the defendants, in compliance with this direction from the plaintiff, slowed up said car to a very slow pace, to-wit, to about a walking pace; that plaintiff, believing that the car would come to an immediate stop, went upon the front steps and platform of said car preparatory to alighting from said car when it came to a stop; that the defendants did not stop the said car at said crossing, but ran it a short distance, to-wit, about a hundred feet, past said crossing at said slow rate of speed, and then, while plaintiff was still standing upon the front platform and steps of said car, with the knowledge and consent of the defendants, and waiting for and still thinking that the car would come to an immediate stop, the defendants in disregard of their duty to the plaintiff, so carelessly and negligently managed, operated, and ran said car, and so carelessly and negligently, suddenly and violently accelerated the speed thereof, and so negligently caused the car to lurch forward violently, that plaintiff was violently thrown from said car to the ground, and by reason thereof" received his injuries. The defendants answered. A trial was had before a jury, which returned a verdict for the plaintiff in the sum of $10,000. From a judgment on the verdict and an order denying a new trial, defendants have appealed.

1. It is contended that the court erred in allowing the amended complaint to be filed, for the reason that it states a different cause of action from that set forth in the original [1] complaint. The original pleading charged negligence in carelessly starting the car and putting the same in motion "by

a sudden and violent start without allowing plaintiff sufficient time to get off'' at Warren street, ''and in consequence thereof plaintiff was suddenly and violently thrown to the ground.'' We find no reversible error in the ruling of the court. In both complaints the defendants were charged with so negligently operating the car that plaintiff was violently thrown therefrom to the ground. This is the *gravamen* of the charge. [2] No variance is to be deemed material unless it has actually misled the adverse party to his prejudice. The defendants could not have been surprised or misled by the testimony offered in support of the amended complaint, because substantially the same evidence was produced at the first trial; and it was on the ground of a material and fatal variance between the allegations of the original complaint and plaintiff's testimony that such new trial was ordered. (See, also, *Flaherty* v. *Butte Electric Ry. Co.,* 43 Mont. 141, 115 Pac. 40.)

2. Plaintiff testified that when he stepped from the car to the platform he said, ''Warren,'' referring to Warren street, in an ordinary and natural tone of voice. He was then asked to speak the word as he did on the night of his injury. His answer was: '' Well, I stepped out, and I said the word 'Warren.' '' Defendants moved that the answer be stricken out on the ground that plaintiff had already testified concerning the tone of his voice, and it was for the jury to determine what his ordinary tone of voice was, after listening to his testimony. The motion was denied. We find no prejudicial error in the ruling. Plaintiff also testified: ''When I said 'natural tone of voice,' I meant the tone of voice one would use when he stepped out on the platform to notify the motorman.''

3. Plaintiff was allowed to testify over objection that on other occasions, desiring to have the car stopped, he had used the word ''Warren'' to indicate his wish to alight at that street. [3] We take judicial notice that this is the common practice. Whether the motorman heard the word as pronounced by the plaintiff on the night in question was a matter for the jury to [4] determine, by inference or otherwise, from all of the facts

and circumstances of the case as detailed by the various witnesses.

4. While the plaintiff was under cross-examination, he said, "I had ridden there before many times." He was then asked by defendants' counsel: "And were the conditions there the same as they had always been prior to that time when you were on the car? Mr. Maury: We object; we were not allowed to go into the conditions; I don't think it is fair on the part of the other side to go into the conditions. The Court: The objection is sustained; it is not proper cross-examination." It is now insisted that the court should have allowed the witness to answer, and an elaborate argument is advanced wherein many suggestions are made concerning the competency, relevancy, and materiality of the inquiry. We think the court unduly restricted the cross-examination, and again suggest the propriety [5] of allowing the fullest scope for such examinations, to the end that the jury may be advised of all facts having a legitimate bearing upon the issues presented. We have no doubt, however, that had the same argument concerning the relevancy and competency of the testimony been presented to the court below, in substance, as has been made here, the objection would have been overruled. It is the duty of counsel to [6] make the record show prejudical error, and, even upon cross-examination, a reasonable effort should be made to advise the court of the object with which a question is asked. (*State v. Byrd*, 41 Mont. 585, 111 Pac. 407.) We cannot say that the action of the court affected the result of the case. In fact, we are satisfied that it could not have done so.

5. Plaintiff's witness Boulter was asked on redirect examination whether he had any expectation of getting a reward for his testimony. Before objection could be interposed, he answered, "None whatever." Defendants' counsel moved to strike the answer. The motion was denied, and the ruling is assigned as [7] error. The point advanced is that the plaintiff was thus allowed to bolster up the testimony of his witness. We think the error, if any, was immaterial in any view. The record discloses

that the witness had already testified: "Nobody has ever promised me anything in this case, neither the plaintiff nor the plaintiff's attorney; I have got no promise whatever."

6. Defendants interposed a motion for a nonsuit and also a motion for a directed verdict, both of which were overruled. These motions were based, primarily, upon an assumption that the testimony failed to disclose knowledge on the part of the motorman that plaintiff wished to alight; that he did not hear the word "Warren" pronounced by the latter, and had no knowledge that he was on the platform of the car preparatory to getting off. The second contention is that plaintiff was guilty of contributory negligence as a matter of law. Plaintiff testified: "When I got on the platform, I says the word 'Warren' to the motorman, Mr. Rundblad. When I said this, I might have been a distance of about two feet from him, but it is close on the platform; you would naturally run against him in coming out of the car. I spoke this word in my natural tone of voice. Just after I said this word 'Warren,' the car slowed down as it neared the east crossing. It slowed down to about four or five miles an hour, an ordinary walking pace, at the last crossing of Warren and East Galena. At the time I was standing on the platform; I was standing there ready to step down when the car stopped, and when it got down to this very slow speed, I stepped down on to the top step. I was then facing east, with my hand on the front handrail, my right hand. From the last crossing of Warren the car proceeded at that rate of speed about a hundred or a hundred and fifty feet. Then it started ahead violently with a terrible jerk and threw loose my hand and threw me to the ground. After I went out on the front platform, the motorman slowed up the car when I mentioned the word 'Warren' to him. He shut the power off to slow it up. I didn't see him do anything. · I heard the controller click around that shuts the power off." Whether the motorman heard the word "Warren" as spoken by the plaintiff, [8] and whether he decreased the speed of the car in response thereto, were, we think, questions for the jury to decide. It was their province to draw such reasonable inferences from all of the

facts and circumstances as they deemed warranted by the evi-
dence. We cannot say, from the record, that it was an unreason-
able inference that Rundblad heard the word "Warren" and
accordingly "slowed up." (See *Jenkins* v. *Northern Pac. Ry.
Co.*, 44 Mont. 295, 119 Pac. 794; *State* v. *Truskett*, 85 Kan. 804,
118 Pac. 1047–1051, a very interesting and novel case.)

We are also of opinion that the question of contributory neg-
ligence was properly submitted to the jury. It is doubtless true
[9]   that the plaintiff's testimony was open to serious doubts as
to its credibility, and that the jury might well have determined
that he jumped from the car while it was in motion, not with an
idea that it was about to stop, but rather because he was near his
home and had purposely ridden beyond Warren street to avoid
walking the distance traversed by the car after that street was
passed. But all of these matters have been laid at rest by the
verdict. We are in the same state of mind in this case as we
were in *Flavin* v. *Chicago, B. & Q. R. Co.*, 43 Mont. 220, 115 Pac.
667.

7. Defendants' counsel requested the court to charge the jury
that the plaintiff could only recover by proving the specific
allegations of his complaint relating to negligence. The court
struck out the word "specific" on motion of counsel for the
[10]   plaintiff. There was no error in so doing. The instruc-
tion was correct in either form. The word "specific" added noth-
ing to it. The court clearly defined the issues to be determined
by the jury and instructed them that the material allegations of
the complaint must be proven by a preponderance of the evi-
dence. This was all that was necessary in the present case.

8. There is a suggestion in the brief that the complaint upon
which the plaintiff went to trial does not state facts sufficient to
constitute a cause of action. We think the complaint is suffi-
cient.

9. In our judgment the damages awarded are excessive, but
not sufficiently so to evidence passion or prejudice in the minds
[11]   of the jurors. Plaintiff has lost all of the toes from one of
his feet. Dr. McCarthy testified that he had recently examined

the foot and found an amputation "taken right back of the articulation of the joints." The foot is still tender and there is a "callous over the end of the amputated surface." In the opinion of the surgeon the foot "is not as strong as the other foot. It is impaired. He can't use it as well. It is smaller than the other foot, smaller than the other leg. He can't walk as well. The ball of the foot is gone. There is no spring to it, no action on the muscles like a normal foot, and consequently atrophy from inactivity. It will remain just about the way it is now. An injury of that kind impairs a man's usefulness for the remainder of his life. It will cause recurring pains all his life, once in a while. The callous should be removed once every week or ten days. Whenever that is done it will cause pain. There is, I think, a permanent cure for the callous. By operating I think that could be permanently removed and the painful condition would not continue. That would be a painful operation." Plaintiff was twenty years of age at the time of the injury, and is now twenty-four years old. It was necessary to operate three times before the foot healed and finally to graft skin thereon from his leg. He suffered intense pain during the operations and still suffers when the callous portion is removed. He lost six months' time on account of the injury. He is a miner by occupation and before his injury received $4 per day in wages. He has resumed work at substantially the same wages; has never lost any time because of the injury, other than when the mine was shut down and all of the men were idle. He walks with the other men to and from the mine where he is employed, a distance of three-quarters of a mile or more, but occasionally rides home with the shift boss. He gets the same amount of time as every other miner in the mine. He has "worked as steadily as the Mountain View mine has, since he returned to work and also got married in the meantime." He has been out duck hunting once since his injury. He uses an artificial appliance on his injured foot to prevent the sensitive part from touching anything. His shift boss testified that he was a good, steady worker; that he had never observed anything to disqualify him from performing his work as a miner;

that he had known and observed him for over two years and did not discover that he had an injured foot until about two weeks before the trial; that he was doing the same work as other miners, receiving the same wages.

The cause is remanded to the district court of Silver Bow county, with directions to grant a new trial unless, within thirty days after *remittitur* filed, the respondent shall consent in writing that the judgment for damages be reduced to $6,000. If such consent is given, the judgment shall be modified accordingly as of the date of its original entry, and, together with the order denying a new trial, will stand affirmed. That part of the judgment relating to costs in the court below is not to be disturbed. Respondent to recover costs on appeal.

*Remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.