McGONIGLE et al., Respondents, v. PRUDENTIAL INSUR-
ANCE COMPANY OF AMERICA, Appellant.

(No. 7,394.)
(Submitted May 29, 1935. Decided June 20, 1935.)
[46 Pac. (2d) 687.]

*Messrs. Kremer & Kremer, Mr. H. D. Carmichael, Mr. L. P. Sanders* and *Mr. J. A. Poore,* for Appellant, submitted a brief; *Mr. Poore* argued the cause orally.

*Mr. N. A. Rotering,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an action to recover upon an insurance policy. In December, 1917, the Prudential Insurance Company of America, defendant herein, issued to John Stafford a policy of life insurance in the amount of $3,000. The plaintiffs, Sarah McGonigle, Leonard P. Stafford, and Frank A. Stafford, were finally designated as the beneficiaries. The policy contained a loan provision which reads as follows: "If this policy be continued in force, the Insured may borrow from the Company, without the consent of the Beneficiary, if any, named herein, with interest at the rate of six per cent. per annum, payable at the end of each policy year, on the sole security of this policy, an amount up to the limit of the Cash Surrender Value hereinafter specified after deducting therefrom all other indebtedness on account of this policy, by making written application for the loan and assigning the Policy to the Company as security. Failure to pay any such indebtedness or to pay interest shall not avoid the policy unless the total indebtedness thereon to the Company shall equal or exceed the loan value at the time of such failure, nor until one month after notice to that effect shall have been mailed by the Company to the last known address of the Insured, of the person to whom the loan was made, and of

the assignee of record at the Home Office of the Company, if any * * * ."

The policy was thereafter continued in force and was in effect on November 4, 1929. On that date the insured applied for and received a loan upon the policy in the amount of $1,058, the full loan value of the policy at that time. On November 13, 1929, the company issued an additional policy in the nature of loan insurance for the amount of the loan. This policy, called the "loan policy," was made payable to the defendant company. In this manner insured was enabled to borrow the full amount of the loan value of the original policy without reducing the amount of his insurance.

To secure the loan upon the original policy, insured agreed to conform to certain requirements prescribed by the defendant company. Among those requirements was the following provision: "Sixth: That if the said loan with interest and premiums for loan insurance, if any, accumulated and accrued thereon at any time shall become equal to or exceed the loan value of said Policy, the Policy shall be forfeited or void provided such loan with the interest and premiums for loan insurance, if any, accumulated and accrued thereon be not reduced to less than the said loan value within one month after notice to that effect shall have been mailed by the Company to the last known address of the insured, of the person to whom loan was made, and of the Assignee of record at the Home Office of the Company, if any."

No part of the loan was ever repaid. The premiums on the original $3,000 policy were paid to September 14, 1932. On July 26, 1932, the loan, together with premium due upon the loan policy and interest thereon, amounted to $1,314.83. The loan value of the original policy as of that date was only $1,278.37. Accordingly, and in conformity with the previously-quoted condition of the loan agreement, the company on July 26, 1932, wrote a letter to John Stafford, notifying him "that unless the loan is reduced on or before August 26, 1932, to an amount less than the loan value, we shall be obliged to cancel

the policy." The letter suggested the payment of $76.20, which would keep the loan within the loan value of the policy until December 14, 1932. On August 24, 1932, the company mailed to John Stafford a premium notice for $42.99 for the premium due on the original policy on September 14. Thereafter, on September 6, 1932, no payment having been made to reduce the loan to the loan value of the policy, the company wrote the following letter directed to John Stafford, 115 South Excelsior Street, Butte, Montana: "We notified you on July 26, 1932, that the amount of loan indebtedness under your policy of the above number would exceed the loan value on July 26, 1932, and that in accordance with the terms of the loan agreement, unless you reduced this loan to an amount less than the loan value, we would be obliged to cancel your policy. As the loan has not been reduced within the time allowed, we regret to inform you that your policy has been cancelled and there is no equity whatsoever thereunder at this time."

Nothing was done in response to the notification to make the payment, until the evening of the 27th of September, 1932. On the day of the death of John Stafford, either the 27th or the 28th of September, he left the home of his daughter and went to the home of a Mrs. Walsh, a neighbor. There he was stricken with myocarditis and died. The family claim that he did not die until the 28th. It is the contention of the company that he died on the evening of September 27; however, this point is not controlling, and is only important as showing the surrounding circumstances attendant upon the death of Stafford and the attempts to save the insurance.

For approximately four years prior to his death, insured had made his home with his daughter, Sarah McGonigle, one of the beneficiaries named in the policy, at No. 115 South Excelsior Avenue, Butte, Montana. This was the last-known address of insured, and it is admitted by all that this was the address to which notification should have been mailed. There can be no doubt about the fact that the letters of July 26 and of September 6, 1932, respectively, were both written at defendant's home

office in Newark, New Jersey. They were both addressed to John Stafford at 115 South Excelsior Avenue, Butte, Montana. The company claims that these letters as thus addressed were placed in open-faced envelopes and so folded that the name and address showed plainly through the transparent part of the envelope in such manner that the address on the letter was necessarily the only address appearing when the envelopes were sealed and ready for mailing. Plaintiffs contend that these letters were never mailed to John Stafford directly or to his address, and that they never reached him personally. In any event, as we have indicated, the matter was allowed to rest until the evening of September 27. On that evening, for some reason the beneficiaries became very active in an attempt to adjust the insurance matter. It is the contention of the company that insured died suddenly and was already dead when they began their negotiations. This the plaintiffs deny. Whatever may be the facts in that particular, the record discloses that the beneficiaries displayed considerable activity in regard to this matter on the evening and night of September 27. One of them proceeded to the home of a Mr. Heaney, an employee of Merkle & Kelly, the Butte agents of the company, and made inquiry and endeavored to make the necessary reinstatement payment to him. Another went to the home of a Miss Holland, the chief clerk of Merkle & Kelly, and asked her if she would accept the amount of the delinquency. Both of these employees refused to accept the payment and said that they could not do so. Later that night Kathleen Stafford, wife of Frank Stafford, a son of insured and beneficiary under the policy, drew a check for $76.20. This check was payable to the company and was signed by Kathleen Stafford, administrator. It was drawn upon an account in the estate of the grandfather of Kathleen Stafford. The evidence shows that in that account there was a balance of only $9 on September 27. At 9 o'clock the next morning Mrs. Stafford proceeded to the bank and made a deposit of $80, so that the check would be good when presented. However, neither Merkle & Kelly nor the company ever cashed this check, and it

was returned to her after the claim for the insurance was denied. The check was antedated to September 23, 1932. It was mailed at 10 P. M. on September 27. On the morning of September 28, when the check was received at the office of Merkle & Kelly, Miss Holland, the chief clerk, wired to the company at Newark, asking what should be done with the check. Two days later Markle & Kelly received a telegraphic reply to this telegram, advising them to take no action regarding the attempted payment and to ignore a letter written on the subject on September 28. The record discloses that this letter was then in the mail; that it was written upon the receipt of the telegram; that it instructed Merkle & Kelly to transmit the check to the home office, and that upon its being received there the insurance would be restored to good standing.

After the death of deceased, plaintiffs made several visits to the office of Merkle & Kelly for the purpose of discussing the insurance proposition. They wrote several letters to the company. In one of the letters Sarah McGonigle inquired about the letter of notification dated July 26, and the letter of cancellation dated September 6. She asked whether these letters had been sent direct to the insured or had been sent to Merkle & Kelly, and inquired just what was done with the letters. After considerable correspondence she advised the company that the notices in question had not been mailed to John Stafford at 115 South Excelsior Avenue in Butte, but had been sent through Merkle & Kelly to Leonard P. Stafford, one of the beneficiaries, at 1021 West Park Street in Butte. The company refused to pay the insurance, and on July 2, 1933, this action was instituted to recover the amount due on the policy.

In the complaint it was alleged that the company never mailed any notice of cancellation to the insured at his last-known address, and that, not having done so, it could not under its policy and contract cancel the policies. The company answered denying liability, and the cause came on for trial before the court with a jury. The trial resulted in a verdict for plaintiffs, and judgment was entered for the sum of $2,686.59, certain deduc-

tions having been allowed for interest and premiums due to the company. Motion for new trial was made and overruled, and thereupon appeal from the judgment was taken to this court.

While the record discloses that there was considerable controversy and conflicting testimony concerning the exact date of the death of John Stafford, and the acts done by the plaintiffs in their attempt to induce the company to accept the delinquent payments, we do not think that any of these matters are of particular importance. The only real issue in the case is whether the defendant mailed the notices of July 26 and September 6 directly to John Stafford, the insured, at 115 South Excelsior Avenue in Butte, or whether these notices were mailed to Merkle & Kelly and by them transmitted to Leonard P. Stafford. It was not necessary to show that the notices were received by the insured. The contract only required that a showing as to the mailing was necessary. The court summarized this matter in one of the instructions given without objection, as follows: "The defendant insurance company was not required to deliver such notice to the insured, but only to mail it to the insured at his last-known address, and if you find it did so your verdict must be for the defendant."

The principal question on this appeal obviously relates to the sufficiency of the evidence to support the judgment. This fact was recognized by the parties and was reflected in the oral arguments and in the briefs. Several specifications of error involve the sufficiency of the evidence. These specifications are stated in different ways so as to present the matter in all of its different phases.

Defendant contends that there is no evidence in the record to dispute the testimony of its witnesses that the notices of July 26 and September 6 were mailed to John Stafford at 115 South Excelsior Avenue in Butte, or the physical facts as to how the letters were addressed, and the character of open-faced envelopes used; and, further, that there was no sufficient evidence to overcome the presumption that the letters were received by John Stafford in the regular course of mail. As we have

already observed, the pertinent and only important issue is that with reference to the mailing of the notices. The question as to actual receipt of those notices is immaterial.

There can be little doubt of the fact that the notices in question were written at defendant's office in Newark, and that, when written, they were addressed to John Stafford, 115 South Excelsior Avenue, Butte, Montana. However, the matter of the mailing of the notices—how, where, and to whom they were mailed—constitutes a controverted fact issue.

The evidence discloses that after the letters or notices were prepared by employees of the company at its head office in Newark, they were delivered to the mailing department of that company. There is no direct or specific evidence in the record as to the actual mailing of either one of these notices. The record discloses that the company sent out large volumes of mail every day, including many letters, and that letters were prepared in the different departments and all were delivered to this mailing department. The identity of the letters in question was lost upon such delivery to the mailing department of the company, which was not a part of the United States postal service, but was an agency of the company. No one testified positively as to how or to whom the mailing was actually made, or that they ever were in fact mailed. Upon that point the company relies upon the system employed by it and upon the testimony of employees as to the manner in which letters and communications were mailed and that if they were ever delivered to the mailing department, they were of necessity put in the mails in the manner indicated, that is, in open-faced envelopes showing the address of the insured.

Merkle and Kelly and their employees all testified, on behalf of defendant, that the original notices were not mailed to them or through them, and that in each instance only a copy on colored paper was mailed to them for their information.

On the other hand, Leonard P. Stafford, one of the beneficiaries, testified in substance that the original copies of the notices on white paper did not go to his father (the insured)

at his address, but that they were received by him (Leonard Stafford) through the mail. He testified that, when received, the notices were not in open-faced envelopes (as claimed by defendant), but that they were inclosed in closed-faced envelopes of the type used as business envelopes by Merkle & Kelly, and that the envelopes were addressed to him and not to his father. He claimed that he had not saved the envelopes in which he received the notices, but had thrown them away, retaining only the notices. He produced at the trial another envelope of Merkle & Kelly which he said was of the same type as the ones in which the notices were received by him. He testified that he did not do anything about the notices because he thought that they were merely sent to him as a beneficiary; for that reason he claimed that he never called them to the attention or delivered them to his father, the insured.

Sarah McGonigle, another of the beneficiaries and a daughter of the insured, testified that she had handled and taken care of all of her father's mail during all of the time involved, and that she knew that the notices had never gone to insured at 115 South Excelsior Avenue; that she would have seen them if they had gone there; that she knew that her father did not receive them or see them, and that she never saw them until they were shown to her by her brother Leonard, after the death of their father.

For the purpose of showing that defendant company had sent the notices in question to Merkle & Kelly, plaintiffs also adduced some evidence to the effect that Miss Holland, chief clerk of Merkle & Kelly, had said, in the course of a conversation on the evening of September 27, that she had given Leonard Stafford a chance to take care of the matter and had held off the cancellation. Miss Holland, however, denied this conversation and claimed that she had never received the original notices in the office of Merkle & Kelly, and that she had never had any authority to act in the premises.

The above abbreviated recital includes the substance of the evidence which was tendered upon this point. Defendant argues

that only one reasonable, rational conclusion can be deduced from that evidence, viz., that the notices were mailed to John Stafford at 115 South Excelsior Avenue, Butte, Montana, and that there was therefore nothing for the jury to determine, citing *Renland* v. *First Nat. Bank,* 90 Mont. 424, 4 Pac. (2d) 488, 492, and *Nichols* v. *New York Life Ins. Co.,* 88 Mont. 132, 292 Pac. 253. It is urged that the evidence tendered by plaintiffs was insufficient to overcome the proof submitted on behalf of defendant to the effect that the notices were mailed to John Stafford at his last-known address, and that such evidence as was tendered by plaintiffs upon this point is so flimsy and improbable as to be totally unworthy of credence.

Defendant contends for the rule, frequently announced by this court, that where the testimony supporting a verdict is highly improbable or incredible, or is inherently impossible in view of the physical facts, then the verdict or judgment based thereon cannot stand. (See *Casey* v. *Northern Pacific R. Co.,* 60 Mont. 56, 198 Pac. 141; *Reid* v. *Hennessy Mercantile Co.,* 45 Mont. 383, 123 Pac. 397; *Morton* v. *Mooney,* 97 Mont. 1, 33 Pac. (2d) 262; *In re Silver's Estate,* 98 Mont. 141, 38 Pac. (2d) 277; *Daniels* v. *Granite Bi-Metallic Consol. Min. Co.,* 56 Mont. 284, 184 Pac. 836.)

There can be no question as to the wisdom or force of that rule. However, under the facts and the evidence disclosed in this case, we do not think that the rule is applicable or controlling here. Along with the rule just announced, it is equally well established that no case should ever be withdrawn from the jury unless it follows as a matter of law that recovery cannot be had upon any view of the evidence, including the legitimate inferences to be drawn from it. (See *Sprinkle* v. *Anderson,* 57 Mont. 223, 187 Pac. 908; *Wagner* v. *Donald,* 67 Mont. 114, 214 Pac. 1099; *Koerner* v. *Northern Pacific R. Co.,* 56 Mont. 511, 186 Pac. 337; *Conway* v. *Monidah Trust,* 52 Mont. 244, 157 Pac. 178; *Bell* v. *Grimstad,* 82 Mont. 185, 266 Pac. 394.)

There is another well-established rule to the effect that the credibility of witnesses and the weight to be given their

testimony are questions for determination of the jury. (*Morrison* v. *Concordia Fire Ins. Co.,* 72 Mont. 97, 231 Pac. 905; *Flavin* v. *Chicago etc. R. Co.,* 43 Mont. 220, 115 Pac. 667; *Wallace* v. *Wallace,* 85 Mont. 492, 279 Pac. 374, 66 A. L. R. 587.) The jury's determination in such circumstances is conclusive upon this court, particularly where, as in the instant case, the same has been approved by the district court in overruling a motion for a new trial. (*Flavin* v. *Chicago etc. R. Co.,* supra; *Wallace* v. *Wallace,* supra; *Sullivan* v. *City of Butte,* 87 Mont. 98, 285 Pac. 184; *Coolidge* v. *Meagher,* ante, p. 172, 46 Pac. (2d) 684.)

In the case of *Renland* v. *First Nat. Bank,* supra, one of the important questions involved was whether a certain letter had been mailed to and received by one of the parties. In discussing that question, the court used the following language: "The presumption that a letter properly mailed was received by the addressee is not conclusive, the statute so declares. It may be rebutted by evidence showing that the letter was not in fact received. Whether the evidence is sufficient to rebut such presumption is a matter for the jury's determination, except where the facts proven are so overwhelmingly against the presumed fact as to permit of but one reasonable and rational conclusion. * * * It was for the jury to resolve from all of the evidence whether the letter was properly posted, and, if so, whether it was by the plaintiff received." In that case the party claiming the letter was mailed had the benefit of the statutory presumption that a letter properly mailed in the United States mail is presumed to have been received by the addressee. Here we are concerned only with the mailing of the notices, and not with their receipt. There is no presumption with respect to the mailing; that fact must be proved by competent evidence. Obviously, therefore, the instant case presents a situation wherein there is even greater reason for submission of the question to the jury than that which existed in the *Renland Case.* (See *In re Harper's Estate,* 98 Mont. 356, 40 Pac. (2d) 51.)

216

It will be noted that in most of the cases upon which defendant relies, the evidence was declared insufficient to support the judgment because the physical facts shown to exist demonstrated the impossibility of such evidence being true, or because the evidence and circumstances themselves were so conflicting and so highly improbable as to be impossible of belief. In this case there are no physical facts appearing which would necessarily render the evidence submitted by plaintiffs untrue or impossible. The physical facts as disclosed by the record do no more than demonstrate that the notices were written in the manner claimed by defendant. There are no physical facts tending to show positively that those notices were mailed in the manner claimed by defendant, viz., directly to John Stafford at his last-known address. In support of this fact, if it be a fact, we have only evidence of the general custom or practice followed by the mailing department of the defendant company in such matters.

Defendant is not correct in asserting that it was shown that the notices were mailed to John Stafford at his last-known address by the positive declarations of witnesses. The positive declarations of the witnesses referred to go no further than to show that the letters were written and delivered to the mailing department of defendant company. Beyond that point the evidence is merely circumstantial, not positive. As against that circumstantial evidence, however strong it may be, plaintiffs submitted evidence to show that the notices were not mailed directly to John Stafford at his last-known address. After carefully considering all the facts and circumstances, we are unable to say that the evidence thus submitted by plaintiffs is so inherently improbable that it could not be accepted as true, or that there is no substantial evidence to support the verdict. Under the authorities to which we have adverted, we conclude that there was sufficient evidence upon this point to go to the jury, and that the jury's determination thereon is conclusive upon this court. (See, also, *Coolidge* v. *Meagher*, supra.)

The defendant, in attempting to prove that the insured died on the evening of September 27, rather than on September 28, as claimed by plaintiffs, sought to introduce in evidence a mortuary advertisement and a news story, both of which appeared in the September 28 issue of the "Butte Daily Post," a local newspaper. Both the advertisement and the news story stated that John Stafford died in the morning of September 28. Plaintiffs objected to the introduction of this matter on the ground that it was hearsay and not the best evidence; that it was incompetent and irrelevant, and that it was contradictory of the specific allegation made by defendant in its affirmative defense. The court sustained the objection and excluded the evidence. Defendant contends that this was error.

It is unnecessary to decide whether this evidence was properly excluded on the ground that it was hearsay evidence. Whether it was hearsay or not, it obviously was not the best evidence of the fact sought to be established. The undertaker was a witness, as were also several other persons who had actual knowledge of the time of the death. Furthermore, neither the advertisement nor the news story would have proved that which defendant was attempting to prove (that John Stafford died on September 27), because both of them stated that he died on the morning of September 28. An additional factor which must necessarily be considered in this connection is the fact that defendant, in its answer, not only admitted that John Stafford died on September 28, but in its affirmative defense it alleged the same thing. At no time did defendant ever seek to amend its answer in this regard. This fact in itself would seem to justify the exclusion of the evidence in question, because it is generally held that no error is committed in excluding evidence of a fact which is admitted. (See *Vogel* v. *Traders' Compress Co.*, 129 Okl. 200, 264 Pac. 147; *In re Coburn*, 165 Cal. 202, 131 Pac. 352; *Knapp* v. *Order of Pendo*, 36 Wash. 601, 79 Pac. 209; *Watson* v. *Woodley*, 71 Colo. 391, 207 Pac. 335.)

We have already indicated that the actual date of the death of insured is not of much importance, except for such bearing as

it might have upon the credibility of testimony with reference to the mailing of the two notices which is the real issue in the case. We conclude, therefore, that there was no error in the rejection of this evidence.

Error is predicated upon the admission in evidence, over the ██ objection of defendant, of certain receipts for premiums paid and notices of premiums coming due upon the insurance of John Stafford. Defendant contends that these receipts and notices were all irrelevant and immaterial, and that they tended to prejudice the jury. There is no merit in such contention. Payment of the premiums to which the receipts in question refer was alleged by plaintiffs in their complaint and denied by defendant in its answer. Thus it became incumbent upon plaintiffs to prove the facts as alleged by them, and upon which issue had been joined by a denial thereof. For the purpose of making such proof, the receipts in question were competent and relevant evidence. We fail to see wherein the admission of this evidence was error, or that it could have prejudiced the jury against defendant's cause.

Complaint is made of undue restriction imposed by the court upon the defendant in the cross-examination of Sarah McGonigle, one of the plaintiffs herein. The witness was cross-examined on the testimony given by her on her direct examination. In addition thereto, defendant attempted to examine her about certain instruments and a conversation not touched upon in her direct examination. She was asked about the $76.20 check written by her sister-in-law, Kathleen Stafford, and about letters written by herself and her husband to the defendant company subsequent to the death of the insured, and also about a conversation which took place between plaintiffs on the evening John Stafford died. The court sustained plaintiffs' objection to cross-examination upon these matters because they had not been gone into on direct examination.

It is true, of course, that "the right of cross-examination is a substantial one and may not be unduly restricted." (*Moss* v. *Goodhart*, 47 Mont. 257, 131 Pac. 1071, 1075; *Rosebud State Bank* v. *Kesl*, 68 Mont. 518, 219 Pac. 814.) It may extend not

only to facts stated by the witness in his original examination but to all other facts connected with them which tend to enlighten the jury upon the questions in controversy. (*Moss* v. *Goodhart,* supra; sec. 10665, Rev. Codes 1921; *Alley* v. *Butte & Western Min. Co.,* 77 Mont. 477, 251 Pac. 517; *Downey* v. *Northern Pacific R. Co.,* 72 Mont. 166, 232 Pac. 531; *McCarthy* v. *Anaconda Copper Min. Co.,* 70 Mont. 309, 225 Pac. 391; *Spurgeon* v. *Imperial Elevator Co.,* 99 Mont. 432, 43 Pac. (2d) 891.) However, it is also well established that while the opportunity to cross-examine the witnesses of the opposing party is a matter of right, the latitude of such examination is largely in the discretion of the trial court, with which this court will not interfere except where there has been a manifest abuse thereof. (*Conway* v. *Monidah Trust,* 51 Mont. 113, 149 Pac. 711; *State* v. *Biggs,* 45 Mont. 400, 123 Pac. 410; sec. 10529, Rev. Codes 1921.)

This court has consistently adhered to the rule that a party cannot under the guise of cross-examination make out his case by witnesses for the other side. (*State* v. *Shannon,* 95 Mont. 280, 26 Pac. (2d) 360; *State* v. *Smith,* 57 Mont. 349, 188 Pac. 644; *State* v. *Wyman,* 56 Mont. 600, 186 Pac. 1.) It appears that some of the testimony sought to be brought out by defendant on this cross-examination was correctly excluded for the reason that it constituted matter which should have been established by defendant in its case in chief, and which, as a matter of fact, was later in the proceedings so presented by defendant. Some of the inquiries were not proper cross-examination. With respect to others, the information sought was thereafter elicited. It does not appear that any prejudice was suffered by defendant. No abuse of judicial discretion was shown in this connection.

The witness Laurence S. Turton, who testified for defendant by deposition, was asked the following question: "If you state you prepared the original of Defendant's Exhibit No. 4, for identification, state the circumstances under which you prepared the same as an employee of the defendant company." The witness answered the question quite fully and detailed the

circumstances under which the exhibit was prepared. Among other things, the answer also contained the statement that on June 8, 1932, "we notified the insured," and then stated the substance of the alleged notification. Plaintiffs moved to strike that portion of the answer on the ground that it was not responsive to the question propounded; that it was not the best evidence because, if there was a written notification, it would be the best evidence. The motion to strike was sustained. Defendant contends that the court erred in so doing.

The objection to this testimony was well taken, and the court was correct in sustaining the motion to strike it. The same witness in another part of his testimony stated that he knew nothing about any notification sent out to policyholders; that his knowledge in that connection was limited to letters and notices sent by himself to the mailing department of the defendant company. Thus it is apparent that the testimony stricken consisted merely of the conclusion of the witness as to the sending of the notice and its contents. The witness had no connection with the mailing department of the company, and he was in no position to swear what the employees of that department did. The portion stricken was not responsive to the question; it was merely a voluntary statement of the witness. The question propounded to the witness referred only to the preparation of the notice of September 6, 1932 (Exhibit 4). The reason for the preparation of that notice was immaterial and foreign to the question asked. The only question was whether the notice of September 6 was addressed and mailed to the insured at his last-known address. The stricken part of the answer was not responsive to the question asked.

Error is predicated on the order of the court in sustaining an ▇ objection to the receipt in evidence of a carbon copy of Defendant's Exhibit 4 (the notice of September 6, 1932). Upon the request of defendant, the plaintiffs delivered over the original copy of the notice of September 6 (the notice of cancellation), which plaintiffs claimed had been sent to Leonard P. Stafford. This original notice was offered in evidence and received as Defendant's Exhibit 4. Defendant then offered in

evidence a carbon copy of the original notice. Plaintiffs objected to it on the ground that it was only a copy of an exhibit already in evidence and would only encumber the record. It was not error to exclude the copy. It is true that Leonard Stafford had made certain pencil marks upon the original copy which was introduced in evidence; however, there is no force in the argument that the carbon copy would prove that there were no pencil marks upon the original notice when it was placed in the mail, for the reason that plaintiffs admitted that the pencil marks were placed upon the notice after its receipt by Leonard Stafford. In view of the production of the original, the carbon copy was without evidentiary value. (Sec. 10585, Rev. Codes 1921; *Rogness* v. *Northern Pacific R. Co.*, 59 Mont. 373, 196 Pac. 989.)

Complaint is made of the fact that Sarah McGonigle was permitted to testify, over defendant's objection, that the notices of July 26 and September 6 were not received at 115 South Excelsior Avenue, Butte, Montana, through the United States mail. Defendant contends that while the witness may not have seen the letters when they arrived at the address given, she could not testify of her own knowledge that John Stafford never received them at that address; that her declaration in this respect was a mere conclusion and as such objectionable. We are not impressed with this contention. The witness testified that she took care of all her father's mail, and that she knew that the notices never came to John Stafford at 115 South Excelsior Avenue because, if they had, she would have seen them; she testified from actual knowledge. Since she handled all her father's mail, she would be likely to have actual knowledge of the fact in question. A witness may testify as to facts within his knowledge derived from his own perception. (*Solberg* v. *Sunburst Oil & Gas Co.*, 73 Mont. 94, 235 Pac. 761.) Where the witness can answer the question propounded to him of his own knowledge, and the value of his testimony does not depend in any degree upon the veracity or competency of any other person, his answers are not objectionable as hearsay. (*State* v. *Crean*, 43 Mont. 47, 114 Pac. 603, Ann. Cas. 1912C, 424.) In

any event, the weight of the evidence was a question for the jury whose duty it was to consider the same in the light of the other evidence bearing on that matter, including the circumstances as they existed, her opportunity to know the facts, and her interest in the case.

William McGonigle, husband of Sarah McGonigle, was a witness for plaintiffs. He was asked how he was notified that it was claimed the policies had been canceled, and when he first learned that there was a claim that policies had been canceled. Defendant objected to these questions, and the objection was overruled. It is true, as defendant points out, that the witness, not being a beneficiary, was not one who was entitled to notice of cancellation. However, no such claim was made by plaintiffs. Since the witness was the husband of one of the beneficiaries, and, as the record discloses, intimately familiar with the various transactions involved, it would seem that his testimony upon the matter should be admitted for whatever it might be worth. Certainly it cannot be said that defendant suffered any prejudice because the witness was permitted to answer the questions.

Objection was made to testimony given by Mr. McGonigle with reference to a certain meeting at the office of Merkle & Kelly, at which the witness, Leonard Stafford, Merkle and Kelly were present. The witness was permitted to testify as to the conversation that took place at that time. He stated that Merkle and Kelly suggested that an attempt be made to compromise the plaintiffs' claim on the policy. Defendant claims that by this testimony an attempt was made to vary the terms of a written instrument by parol testimony, and that Merkle & Kelly had no authority to bind the defendant. The record discloses no foundation for such contention. There was no attempt to vary any instrument. This evidence was relevant and competent as bearing upon the principal question in issue, viz., the mailing of the notices. Both Merkle and Kelly, as witnesses for defendant, testified quite fully about the same conversations. Under such circumstances it is difficult to see how defendant

could have been prejudiced by permitting McGonigle to testify in that regard.

For similar reasons, there is no merit in the claim that error was committed in allowing Leonard Stafford to testify, over objection, concerning certain conversations between himself and Merkle and Kelly. Both Kelly and Miss Holland testified as to those conversations, what happened and what was said. It was permisible for Leonard Stafford to give his version thereof. When part of an act or conversation is given in evidence by one party, the whole on the same subject may be inquired into by the other. (Sec. 10515, Rev. Codes 1921.)

Plaintiffs' Exhibit N is a closed-faced envelope, a business envelope of Merkle & Kelly, bearing a return address of that firm. The envelope was produced by Leonard Stafford, who claimed that although he had thrown away both the envelopes in which he had received the notices of July 26 and September 6, this envelope was of identical kind. Its introduction in evidence, over objection of defendant, is specified as error. This specification is without merit. Defendant produced several open-faced envelopes, claiming that they were samples of the kind of envelopes in which the notices were mailed from the home office in Newark. These were received in evidence. It was proper to admit the other envelope so that the jury might better understand the contentions of the parties.

Finally, error is predicated upon the giving of several instructions. It will not be necessary to discuss each one of these instructions and the objections raised against them separately. Many of them are criticised as being inadequate or incomplete, or too general and thereby misleading. Others are asserted to be without foundation in the evidence, or incorrect statements of the law. It is elementary that instructions must be considered in their entirety, and where as a whole they correctly state the law, and where instructions general in their nature are by specific instructions limited to the facts in the case, error cannot be predicated on an instruction that is incomplete or too general. (See *Russell* v. *Sunburst Refining Co.*, 83 Mont. 452, 272 Pac. 998, and numerous cases cited therein.)

A careful reading of the instructions given discloses that on the whole they comprise a fair, complete and correct statement of the law applicable under the proof submitted. They are not vulnerable to any of the objections to which our attention has been directed.

After carefully considering all of the specifications of error which have been urged, we must conclude that no reversible error was committed. The judgment is affirmed.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the above decision.