KANE, RESPONDENT, v. OEHLER ET AL., APPELLANTS.

(No. 4,643.)

(Submitted February 1, 1922. Decided February 27, 1922.)

[205 Pac. 245.]

*Conversion—Exemplary Damages—Malice—Evidence — Admissibility—Verdict—Clerical Error—Correction on Appeal.*

Conversion—Exemplary Damages—Malice—Evidence—Sufficiency.
1. Evidence in an action for the conversion of a fence inclosing farm land, in which exemplary damages were asked, reviewed and *held* to show that the acts complained of were done in a spirit of malice toward plaintiff.

Same—Exemplary Damages—Malice—Evidence—Admissibility.
2. Where exemplary damages are sought in an action for conversion, evidence of acts of the defendant other than those alleged in the complaint, whether preceding or following those alleged, is admissible if so connected with those charged as to tend to show a feeling of hostility or malice toward plaintiff.

Same—Verdict—Clerical Error—Correction on Appeal.
3. Where it is apparent from the record that the jury intended to fix the damages in an action in conversion at the limit fixed in the court's instructions ($158), but either by clerical error or inadvertence returned a verdict for a larger amount ($258), and the evidence shows clearly that plaintiff is entitled to recover, the judgment will not be reversed, but the cause remanded with directions to modify the judgment to comport with the intention of the jury.

*Appeals from District Court, Yellowstone County; Charles A. Taylor, Judge.*

ACTION by Margaret Kane against Carl Oehler and another. From a judgment for plaintiff, and from an order denying them a new trial, defendants appeal. Modified and affirmed.

Cause submitted on briefs of counsel.

*Messrs. Collins & McKinney,* for Appellant.

*Mr. Guy C. Derry,* for Respondent.

MR. COMMISSIONER HORSKY prepared the opinion for the court.

This action was brought to recover of the defendants, Carl Oehler and Marie Oehler, damages for the conversion of a

certain fence in which the plaintiff, Margaret Kane, claimed a one-half interest.

The plaintiff and the defendant Marie Oehler owned adjoining tracts of land in Yellowstone county, Montana. The fence in question, one-half mile in length, marked what was thought to be the boundary line dividing a part of these two tracts of land. Marie Oehler's predecessor in interest, one John Ingus, built the fence, and according to the testimony of the plaintiff, the posts used in its construction were furnished by Fred Dart, predecessor in interest of the plaintiff. Mr. Dart testified that he and Mr. Ingus understood the fence in question to be a partnership fence and that he (Dart) supposed that it had been erected on the line between the two places.

After plaintiff had acquired the tract of land formerly owned by Mr. Dart, she caused it to be surveyed, and found that the fence was over on her land a distance of about 100 feet. Through her brother, Walter Kane, she caused this information to be communicated to the defendants. Mr. Kane said he informed defendants that the fence was off the line and on his sister's ground, and gave them five days in which to verify the survey, by having the land resurveyed themselves, and, if they found plaintiff's survey correct, he would himself move the fence over on the line. This is disputed by defendants, who claim that Mr. Kane notified them to move the fence in five days or he would claim it, and that after being so notified they consulted the county attorney of Yellowstone county, who advised them to move it, which they did on or about November 27, 1918.

Plaintiff then brought this action for the conversion of the fence, which she valued at $66, and in which she claimed a one-half interest, and for damages sustained by her because of the removal of the fence by the defendants, and also for $125 as exemplary damages. Defendants, in their answer, deny all the allegations of plaintiff's complaint, and by way of counterclaim allege that they have been damaged in the

sum of $40 occasioned by stock belonging to plaintiff tres-
passing upon their lands, and for a further defense aver that
they removed the fence in question at the request of the
plaintiff.

Plaintiff by her reply put in issue all of the new matter set
up in the answer. A trial was had, resulting in a verdict and
judgment against the defendants for the sum of $258. De-
fendants appeal from the judgment and order denying their
motion for a new trial.

It is first contended that there is no evidence to sustain
[1] the allegations of the complaint, wherein it is alleged
that the conversion of the fence on the part of the defend-
ants was done in a spirit of malice towards the plaintiff.

With this we do not agree. There was evidence introduced
on the part of the plaintiff showing that the defendants, in
effecting a removal of the fence, deliberately chopped down
the posts, and that in some instances posts were left sticking
up from the ground in sharp slivers, and others were
splintered. The evidence further showed that the defendants
moved this fence to their home; that the fence was removed
on or about the twenty-seventh day of November; and that
plaintiff, at the time, had within her inclosure stock of her
own, as well as several head of stock that she was pasturing
for a neighbor; and that, after the fence was removed, the
defendants dogged plaintiff's stock off her place.

As to one such incident plaintiff testified as follows: "As
she dogged them past [referring to horses alleged to have been
driven off the place of plaintiff by the defendant Marie
Oehler], I ran down to open the gate, and she picked up
some rocks and threatened me. She said she would dog
everything off my place, that she wouldn't allow me to have
one thing on my place, and she kept her word. They dogged
the stock clear off my place three different times, and the
last time was a cold day last winter, and the cows went off,
and one of the cows lost her calf; was frozen to death when
we found them." Further from her testimony: "Miss Oehler

said that she would dog this stock so insistently that I wouldn't be able to keep one thing on the place, and she kept her word." As to the conduct of one of the defendants, on another occasion, she testified: "One morning I saw Mr. Oehler walking up and down my fence right by the gate; rather, right before my kitchen door. He was walking up and down by the gate with his sleeves rolled up, a big club in his hand, and he was looking very threatening. He walked up and down there for three hours. There was no one home but myself. There was nothing around there. There was seemingly no occasion whatever for Mr. Oehler's presence there. There was nothing at all in sight." The above testimony was sufficient to carry to the jury the question as to whether or not the conversion of this fence on the part of the defendants was done in a spirit of malice towards the plaintiff.

But defendants complain that the court erred in admitting [2] testimony of this character as to the conduct of these defendants toward plaintiff subsequent to the removal of the fence. The court very properly admitted this evidence. "Evidence of other acts of defendant than those alleged and for which damages are sought, both preceding as well as following the particular acts, is admissible if so connected with the particular acts as tending to show defendant's disposition, intention, or motive in the commission of the particular acts for which damages are claimed." (17 C. J. 1041, 1042.) The rule is thus stated in 8 R. C. L. 651: "Where exemplary damages are claimed, evidence of any fact which legitimately tends to show the motive and intent of the defendant in doing the act complained of is admissible, as, for example, the existence or absence of malice, or other aggravations essential to the allowance of such damages. Hostility at a time subsequent to the injury may be shown as having a tendency to prove that it existed when the injury was inflicted." (1 Wigmore on Evidence, sec. 396.)

The above also disposes of the contention made that the court erred in giving an instruction on exemplary damages.

It is next contended that the verdict is against the law, in [3] that the verdict of the jury discloses that they did not follow the instructions given by the court.

The court instructed the jury both on the question of compensatory and exemplary damages, and under the instructions as given the limit of recovery was fixed at the sum of $158; just $100 less than the amount fixed by the jury in their verdict. It is evident that the jury made an error in computation or inadvertently inserted the figure ''2'' instead of the figure ''1'' in their verdict. But for this clerical error the verdict would have been in accord with the instructions. It is further apparent that the jury intended to fix the damages at the limit fixed by the court in its charge to the jury.

Bearing in mind the observation of this court in *Consolidated etc. Min. Co.* v. *Struthers,* 41 Mont. 565, 111 Pac. 152, that ''a verdict is not to be technically construed, but is to be given such a reasonable construction as will carry out the obvious intention of the jury,'' which intention may be arrived at by a reference to the issues as made by the pleadings, the instructions submitted by the court, and the evidence introduced at the trial, and giving heed to the command of section 6593 of the Revised Codes (1907), which provides that no judgment shall be reversed by reason of any error in the proceedings which does not affect the substantial rights of the parties, which statute was designed to prevent reversal of cases wherein, as in the case at bar, substantial justice has already been done, we are unwilling in a case such as this one, when the intention of the jury is apparent from the record and where the evidence so clearly and unmistakably shows that plaintiff is entitled to recover, to reverse the case by reason of a perfectly apparent clerical misprision on the part of the jury.

We have examined the other alleged errors assigned by appellants and find them without merit.

We recommend that the cause be remanded to the district court, with instructions to modify the judgment made and entered in this cause to read that the plaintiff is entitled to recover of and from the defendants, in addition to her costs and disbursements in this action, the sum of $158, instead of the sum of $258, as said judgment now reads, and that, when so modified, the judgment and order appealed from be affirmed.

PER CURIAM: For the reasons stated in the foregoing opinion, it is ordered that the cause be remanded to the district court, with directions to modify the judgment by reducing the amount thereof $100 as of the date of the original judgment, and, as thus modified, it will stand affirmed. Each party will pay his own costs in this court.

*Affirmed.*