GILMORE, Appellant, *v.* MULVIHILL et al., Respondents.

(No. 7,985.)

(Submitted December 18, 1939.   Decided January 19, 1940.)

[98 Pac. (2d) 335.]

602

*Mr. George W. Farr,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. F. F. Haynes,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an action to recover $285 paid on an executory contract whereby plaintiff agreed to purchase 285 head of five-year-old ewes from the defendants, and for damages for breach of such contract by the defendants, with interest on the amounts demanded and costs of suit. A copy of the contract is made Exhibit A to the complaint. Defendants' demurrer to the complaint was overruled. The answer was a general denial followed by counterclaim for alleged breach of contract by the plaintiff. The reply put in issue all the affirmative allegations of the answer.

The contract was entered into September 21, 1937, and provides for delivery f. o. b. cars at Miles City, Montana, between October 1 to 5, unless weather conditions or other contingency should render further time advisable in which to make delivery, and payment of the balance of the purchase price on delivery.

Defendants had theretofore purchased 1,020 ewes from one Lloyd, and it appears that delivery was made of such ewes by Lloyd to the defendants at the time plaintiff was on hand at Miles City to receive the ewes for which he had contracted.

The defendants, in accepting delivery from Lloyd, ran the ewes through a chute, examined their teeth to determine the ages and separated them into three lots—each lot being marked with paint on the head, side or rump to indicate age. Plaintiff was present while the "mouthing" was done, but took no part in the "mouthing" or segregation. He looked on and noted the condition of the teeth of a good portion of the sheep as they passed through the chute and were examined. After the process of "mouthing" and segregation was completed, plaintiff was told he could select the 285 ewes his contract called for from a lot of 310, which defendants contended were all five years old with the exception of 30 to 50 admitted to be six years old or older. Plaintiff testified that he then caught and examined the teeth of some 30 or more of the ewes in the lot of 310, and each one examined was toothless. He thereupon refused to accept the ewes offered on the ground that they were "gummers" and toothless and over five years old. He offered to accept another lot of 137 which he contended were fives, but which defendants said were fours, and take his balance out of the 310. Defendants offered to deliver 285 out of the 310 lot and in addition offered to throw in, without cost to plaintiff, 12 culls which Lloyd had turned over to the defendants without cost, and 8 additional, or 20 that defendants offered to add to the 285 free; plaintiff offered to accept 30 over and above the 285, paying for only 285. This the defendants refused; the negotiations ended, and defendants shipped the ewes to Columbus and later sold them, alleging a loss of $245.25 on the resale and expenses incurred by plaintiff's refusal to accept delivery of $116.05, or a total loss sustained of $361.30. This action followed.

The matter was tried to the court sitting with a jury, and and the jury returned the following verdict: "We, the jury in the above entitled cause, find the issues herein in favor of the plaintiff and against the defendants and allow and assess the

plaintiff's damages at the sum of $114.00, together with interest thereon at the rate of six per cent. per annum from the fifth day of October, 1937.''

The plaintiff moved to have the judgment include the $285 paid on the purchase price of the ewes in addition to the amount of damages allowed by the verdict. The motion was denied and the judgment was entered for the amount of $114 specified in the verdict. The appeal is from the judgment.

The three assignments of error specified all relate to the court's refusal to grant plaintiff's motion to enter judgment for the advance payment of $285 with interest thereon, in addition to the damages awarded by the verdict.

In addition to the facts above mentioned, the complaint alleges that the plaintiff was at the place of delivery at the time agreed for delivery, ready, willing and prepared to pay the balance due and accept delivery of 285 five-year-old ewes meeting the conditions of the contract, but that defendants failed and refused to offer him such ewes at the time of delivery or at any other time.

Plaintiff alleged and testified that there was an advance in the price of ewes such as those contracted for of approximately sixty cents per head between the time the contract was entered into and the time of delivery. On the other hand, defendants alleged and testified that the price had declined and they were compelled to sell at a loss which, combined with the expense incident to caring for the sheep, shipping them from Miles City to Columbus and reselling constituted the amount demanded by their counterclaim. Another witness who was running sheep with the Lloyd band testified that his sheep were cut out of the Lloyd band at the time the Lloyd sheep were delivered to the defendants, and that his sheep and Lloyd's ran about the same in ages, from three to sixes, and that ewes of the kind plaintiff had contracted for had advanced in price from September 21, the date of the contract, to October 5 and were selling from $4 to $4.50 per head; and that he sold some sixes that day to a person he named, at $3.60 per head. Defendants' witnesses testified that the sheep offered to plaintiff

were five-year-old ewes. Both defendants however, admitted that there were from 30 to 50 six-year-old ewes in the lot of 310 out of which plaintiff was offered the 285 his contract called for.

Lloyd, a witness for the defendants, testified that he did not "mouth out" the sheep the day of delivery, but turned over 1,020 to defendants, received pay for 1,008, 12 head being "thrown in"; that he raised about 700 of the sheep and bought the others. He classified the ages as "about" as follows: Eighty twos, 500 threes, the rest fours or fives, except 30 to 50 sixes. In cutting the sheep out according to ages, the defendant Stewart testified that there was no distinction made between fives and sixes in marking; he further testified that the twos and threes were marked the same. It, therefore becomes clearly obvious that the defendants did not offer to deliver to the plaintiff 285 five-year-old ewes, and defendants are defeated by their own testimony. If there were 30 six-year-old ewes in the lot of 310 to which plaintiff was restricted in selecting his 285, the defendants' offer of delivery was five head short of the number and kind of ewes covered by the contract according to defendants' own classification as to ages, and if there were 50 ewes in the lot of 310 six years old or older, the offer was 25 head short of the number of fives offered for delivery.

All testimony was to the effect that six-year-old ewes are un- desirable ewes, and that even five-year-olds are classed as aged sheep, facts well known to all sheepmen. In addition to the controversy about the age of the sheep defendants offered to deliver, the contract provides the sheep shall "be in good merchantable condition"; that none of the ewes shall be "diseased, cull, loco, crippled, wrinkled bodies, ruptured or shelly." That toothless ewes are not in "good merchantable condition" is a matter of common knowledge, and that there were culls in the lot is obvious from the fact that Lloyd presented 12 head of the lot of 310 to the defendants as a present and referred to them in his testimony as culls. In short, the 310 out of which plaintiff was offered his 285 contained not only the 12 culls Lloyd delivered to the defendants without cost, but all other

ewes out of the band of 1,020 that were left after other purchasers had taken their choice.

Returning now to the verdict: The jury say that they find the "issues" in favor of the plaintiff, but say nothing about refunding the payment of $285 made by the plaintiff when the contract was entered into. It thus becomes necessary in order to determine the merits or demerits of plaintiff's assignments of error to determine what issues were raised by the pleadings.

Defendants admit in the cross-complaint that $285 was paid on the sheep at the time the contract was entered into, hence the payment of that amount by the plaintiff to the defendants is not in issue. (*Frank* v. *Symons*, 35 Mont. 56, 88 Pac. 561; *Russell* v. *Chicago, Burlington & Quincy Ry. Co.*, 37 Mont. 1, 94 Pac. 488, 501.) The right of the plaintiff to recover the $285 however is in issue, and this issue, together with the issue as to whether plaintiff suffered damages by defendants' alleged breach of the contract and in the amount thereof, are the two issues made by plaintiff's pleadings. In addition, defendants' affirmative defense being denied by the reply, raised the issue of defendants' damages by reason of plaintiff's alleged breach of contract. These three issues are all that were raised in the pleadings by either party. Issues of fact are for the jury unless a jury be waived (sec. 9327, Rev. Codes). Section 9323, Revised Codes, provides:

"Issues arise upon the pleadings when a fact or conclusion of law is maintained by the one party, and is controverted by the other. They are of two kinds:

"1. Of law; and,

"2. Of fact."

Section 9326, Revised Codes provides:

"An issue of fact arises in either of the following cases:

"1. Upon a denial, contained in the answer, of a material allegation of the complaint; or upon an allegation, contained in the answer, that the defendant has not sufficient knowledge or information to form a belief, with respect to a material allegation of the complaint;

"2. Upon a similar denial or allegation, contained in the reply, with respect to a material allegation of the answer;

"3. Upon a material allegation of new matter, contained in the answer, not requiring a reply, unless an issue of law is joined thereupon;

"4. Upon a material allegation of new matter, contained in the reply, unless an issue of law is joined thereupon."

The court may not invade the province of the jury when the verdict is supported by substantial evidence. (Sec. 10698, Rev. Codes; *Wallace* v. *Wallace*, 85 Mont. 492, 279 Pac. 374, 66 A. L. R. 587; *Wibaux Realty Co.* v. *Northern Pac. Ry. Co.*, 101 Mont. 126, 54 Pac. (2d) 1175.) The credibility of witnesses and the weight to be given their testimony are questions for determination by the jury. (*McGonigle* v. *Prudential Ins. Co.*, 100 Mont. 203, 46 Pac. (2d) 687, and cases cited.)

The verdict in the case at bar being supported by substantial evidence, we are thereby concluded as to the issues of fact.

We have a verdict before us returned by the jury finding not any particular issue, but the *issues* in favor of the plaintiff. It necessarily follows that the jury found the two issues raised by plaintiff's pleadings in favor of the plaintiff and the issue raised by defendants' answer in favor of the plaintiff, and all issues against the defendants.

The established rule applied in the construction of a verdict is laid down in *Consolidated Gold & S. M. Co.* v. *Struthers*, 41 Mont. 565, 111 Pac. 152, 154, where it is said: "A verdict is not to be technically construed, but is to be given such a reasonable construction as will carry out the obvious intention of the jury. In arriving at this intention, reference may be had to the issues made by the pleadings, the instructions submitted by the court, and the evidence introduced at the trial; and if by a fair and reasonable construction of it, in view of the whole record, the intention of the jury is manifest, it should be allowed to stand." This rule has been followed by this court in a number of later cases: *Lehrkind* v. *McDonnell*, 51 Mont. 343, 153 Pac. 1012; *Kane* v. *Oehler*, 62 Mont. 417, 205 Pac. 245; *Stagg* v. *Broadway Garage Co.*, 87 Mont. 254, 286 Pac. 415; *Tripp* v. *Silver Dyke Min. Co.*, 70 Mont. 120, 224 Pac. 272. To apply this rule in the case at bar, an analysis of

the "issues made by the pleadings, the instructions submitted by the court, and the evidence introduced at the trial" is necessary. The issues and the evidence introduced at the trial have heretofore been carefully considered, and we will now review the instructions of the court.

The verdict in the case at bar is a general verdict. A general verdict is that by which they (the jury) pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant. (Sec. 9360, Rev. Codes; *Pure Oil Co.* v. *Chicago, M. & St. P. Ry. Co.*, 56 Mont. 266, 185 Pac. 150; *Dalke* v. *Pancoast*, 63 Mont. 524, 208 Pac. 589; *Josephi* v. *Mady Clothing Co.*, 13 Mont. 195, 33 Pac. 1.) Further definitions are: "A general verdict is that by which the jury pronounce generally upon all or any of the issues, either in favor of plaintiff or defendant. It is a finding in favor of the prevailing party of every material fact properly submitted to the consideration of the jury." (64 C. J. 1053, sec. 847.) Again it is said: "The verdict or general finding of the District Court in favor of the plaintiff included findings of all facts essential to the verdict, including one to the effect that the defendant was the real owner of the stock, if there was evidence from which such finding could be made." (Citing cases.) (*O'Keefe* v. *Pearson*, (1 Cir.) 73 Fed. (2d) 673, 676, 97 A. L. R. 1243.)

The universal rule supports the conclusion that when a jury by its verdict finds the issues in favor of a particular party, such finding necessarily includes all issues raised by the pleadings. Clearly, the refund of the $285 was made an issue by the pleadings; its payment was acknowledged by the defendants, and it was covered by the instructions.

Counsel for defendants contends in his brief that the case of *Lehrkind* v. *McDonnell*, supra, is "squarely in point," and in his oral argument frankly admitted that if that case was not controlling, his client was out of court. That case, like the case at bar, was an action for damages for the breach of an executory contract to sell personal property which the buyer alleged was inferior in quality to that contracted for. In each case a counterclaim was set up accompanying an answer in general

denial; also in each case substantially the same verdict was returned; the verdict in the *Lehrkind Case* being in the following words: "We, the jury in the above-entitled case, find the issues in favor of the plaintiff and assess his damages at $205$^{50}$/$_{100}$." Five hundred dollars were paid by the plaintiff in that case on 2,500 bushels of barley to be delivered some months later; delivery of the barley was offered at the proper time and refused on account of not being the quality contracted for. The plaintiff sued for the return of the $500 advance payment, with interest thereon, and damages for breach of contract based upon the amount of alleged profits that could have been realized had the quality of barley contracted been delivered. The verdict returned allowed the plaintiff the amount mentioned therein as heretofore recited, which was less than one-half of the $500 advance payment. The defendant's counterclaim did not allege damages for the full amount of the advance payment and he tendered back $175 of the $500. The able and distinguished Chief Justice who wrote the opinion in the *Lehrkind Case* admitted that the controversy on the question under consideration "involves some difficulty." In arriving at his conclusions in that case he quoted the rule laid down in *Consolidated Gold & S. M. Co.* v. *Struthers,* supra. It will be noted that the learned Chief Justice in the *Lehrkind Case* grounded his final conclusions upon these facts and statements: "The verdict in this case, standing alone, is ambiguous, in that it finds the issues generally for the plaintiff and fixes the award to him in an amount inconsistent with the general finding. When we examine the evidence and the instructions, however, we are justified in concluding that the purpose of the jury was to award to the plaintiff, out of the cash payment, only a sum in excess of the amount tendered to the plaintiff because they did not think defendant damaged in the amount claimed, and otherwise to find for the defendant. They were definitely instructed that, if they found the defendant at fault, they should award to plaintiff the amount of the cash payment in full, and, in addition thereto, such damages in the way of lost profits as the evidence showed he had suffered. Evidently, if the intention had

been to find for the plaintiff on all the issues, the jury would have followed this explicit instruction. There is no presumption, however, that they deliberately disregarded it; on the contrary, the fact that they made the award as they did raises a strong presumption that they thought this to be the full amount to which the plaintiff was entitled, inadvertently couching their verdict in terms not accurately expressing their conclusion. The evidence justifies this view, *because it preponderates in favor of the defendant upon the issue as to what the understanding of the parties really was, and therefore upon the issue as to who violated the contract.* The trial judge should have ordered the jury to reform the verdict so that there would be no doubt left as to their meaning. That he did not do so is no reason why he should not have construed it in the light of the record to ascertain the intention of the jury and render judgment accordingly.''

It thus becomes clear that the learned Chief Justice was led to the conclusions reached in the *Lehrkind Case* as to what the jury intended ''because it [the evidence] preponderates in favor of the defendant upon the issue as to what the understanding of the parties really was.'' And then he adds, in effect, the trial judge should have ordered the jury to reform the verdict so it would make their meaning clear, and, ''that he did not do so is no reason why he should not have construed it in the light of the record to ascertain the intention of the jury and render judgment accordingly.''

It is our opinion that it was competent for the trial judge ▇▇▇ in the case at bar to follow the rule thus laid down in the *Lehrkind Case,* determine the meaning of the verdict from the record and to have entered judgment accordingly; and we are further of the opinion that it is competent for this court to follow such rule in our review here, construe the verdict in the light of the record to ascertain the intention of the jury, and direct judgment be rendered accordingly.

Applying the rule above outlined, and grounding our conclusions upon ''the issues made by the pleadings, the instructions submitted by the court and the evidence introduced at the trial,'' we find a material difference between the two cases. The testi-

mony in the case at bar is in sharp conflict in some particulars, but clearly preponderates in favor of the plaintiff on the most important question, i. e., the age and condition of the ewes. The evidence shows that defendants did not offer to deliver 285 five-year-old ewes in good merchantable condition to the plaintiff. Furthermore, we find the instructions such that we are of the opinion that it was impossible for the jury to return a verdict allowing the plaintiff damages in any amount, unless they also found that the plaintiff was entitled to the return of the advance payment of $285 paid by the plaintiff to the defendants at the time the contract was entered into.

Instructions 10, 11 and 12 are the only instructions that are particularly pertinent on the point under consideration, and such instructions are as follows:

"Instruction No. 10. You are instructed that if you believe from a preponderance of the evidence that the defendants contracted with the plaintiff to sell and deliver to the plaintiff a certain number of sheep at the time alleged in plaintiff's complaint, and that plaintiff was ready and willing to receive and pay for the sheep at the time and place and at the price agreed upon, the defendants were bound to offer to deliver the sheep in accordance with the terms of the contract, and if they did not do so then the plaintiff is entitled to recover from the defendants the money paid to the defendants as a part payment of the purchase price together with the damages, if any, sustained by him by reason of the non-delivery of said sheep."

"Instruction No. 11. You are instructed that if you find from a preponderance of the evidence that the defendants agreed to sell to the plaintiff 285 head of five-year-old ewes, and that defendants did not deliver or offer to deliver to the said plaintiff the said 285 head of five-year-old ewes so agreed to be sold to plaintiff, then and in that event your verdict should be for the plaintiff and against the defendants for the sum of $285, paid by the plaintiff to the defendants at the time of the making of the agreement for the purchase of said sheep, together with interest thereon at the legal rate from October fifth, 1937, and in addition thereto you should also allow plaintiff such damages as he has proven by the evidence to have sustained by

reason of the failure of the defendants to sell and deliver to him the sheep so agreed to be sold. In determining such damages you are instructed that plaintiff is entitled to recover the excess, if any, of the value of the sheep to him over the amount which would have been due to the defendants under said contract if it had been fulfilled, that is to say, the difference between the sum of $3.65 per head, the price agreed to be paid by the defendants for said sheep, and the value of said sheep at the time and place specified for the delivery thereof, namely between the first and fifth days of October, 1937, at Miles City, Montana. If you find the plaintiff is entitled to recover damages you may allow him interest on the damages sustained by him from the fifth day of October, 1937, at the rate of 6% per annum.

"Instruction No. 12. You are instructed Gentlemen of the Jury that if you find from a preponderance of the evidence in this case, as defined in these instructions, that the defendants delivered in accordance with the terms of their contract, 285 head of five-year-old ewes at Miles City, Montana, and tendered the said ewes to the plaintiff; and if you further so find that the plaintiff refused to accept said 5-year-old ewes in violation of the terms of his contract, then, as a matter of law, the plaintiff is not entitled to recover from the defendants any portion of the advance or down payment made by the plaintiff to the defendants at the time of entering into the contract, providing, that you find by a preponderance of the evidence that the defendants fully complied with the terms of the contract and tendered for delivery to the plaintiff at Miles City, Montana, on October 1st, 1937, 285 ewes, of the age of five years, as defined in the contract, and that the plaintiff wilfully refused to accept the same and wilfully refused to complete the contract by the acceptance of said ewes and by payment of the balance thereof as provided by the contract."

If the jury did not intend to return a verdict directing the return of the $285, in addition to damages allowed, then the verdict is not only contrary to the instruction (No. 10), but in direct conflict therewith in that the instruction is to the effect that if defendants did not offer to deliver at the time and place

285 ewes in accordance with the contract "the plaintiff is entitled to recover from the defendants *the money paid to the defendants as a part payment of the purchase price together with damages,* if any sustained by him," etc.

"Together," in the sense used in the instruction means, "In union with; along with." (Webster's New International Dictionary.) The instruction as to finding damages is made contingent upon the finding that plaintiff was entitled to recover the advance payment of $285, and if plaintiff was not entitled to recover such advance, he could not, under the instruction, establish damages.

Instruction No. 11 is even more full, clear and specific on this point than Instruction No. 10. Instruction No. 11 on this point is to the effect that if the jury found the defendants did not offer delivery of 285 five-year-old ewes, the verdict should be for the return of the $285, with interest thereon and, in "addition thereto," such damages as plaintiff pleaded and proved. True, there was an instruction given in the *Lehrkind Case,* supra, similar to instructions 10 and 11 in the case at bar, but in the *Lehrkind Case,* the evidence, it will be noted, was held to preponderate in favor of the defendant but verdict returned in favor of the opposing party, while here the evidence preponderates in favor of the plaintiff and the verdict is in favor of the plaintiff.

By Instruction No. 12 the right of defendants to recover on their counterclaim was made contingent upon their having offered to deliver 285 five-year-old ewes to the plaintiff according to the terms of the contract, and plaintiff's wilful refusal to accept the same. If the general verdict returned was not intended to direct the refund of the $285, with interest thereon together with the damages found sustained by the plaintiff, then the verdict was contrary to the instructions and, on motion, plaintiff was entitled to a new trial.

After giving due consideration to issues made by the pleadings, the instructions submitted by the court, and the evidence introduced at the trial, as required by the established rule heretofore mentioned, we are satisfied that the plaintiff is clearly entitled to have the advance payment of $285 refunded, with

614

interest thereon at the legal rate from October 5, 1937. This being our conclusion, the question then arises: Shall the cause be remanded with directions to the trial court to correct the judgment in accordance with this opinion, or order a new trial? If the judgment be ordered corrected, it will be on the presumption that the judgment entered by the trial court is not in accord with the intention of the jury, as to order a judgment corrected on any other ground would conflict with the established rule relative to changing a verdict subsequent to the discharge of the jury.

Our conclusion is that the judgment of the trial court is erroneous in not giving effect to the full intent of the jury, and that it is within the province of the trial court to make the necessary correction under the rule applied in *Stagg* v. *Broadway Garage Co.*, supra, *Frank* v. *Symons,* supra, and *Wheeler* v. *Jones,* 16 Mont. 87, 40 Pac. 77.

The judgment is therefore reversed and the cause remanded with instructions to the trial court to enter judgment in accordance with this opinion. Interest to be allowed on the $285 from October 5, 1937, but no interest to be allowed on the $114 returned as damages by the verdict, until judgment was entered. (Sec. 7725, Rev. Codes; *Eskestrand* v. *Wunder,* 94 Mont. 57, 20 Pac. (2d) 622.)

Reversed and remanded.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN and ARNOLD concur.

MR. JUSTICE ERICKSON, deeming himself disqualified, takes no part in the foregoing decision.