WOOD, RESPONDENT, v. JAEGER, APPELLANT.

No. 9221.

Submitted March 17, 1954. Decided May 18, 1954.

Rehearing Denied July 30, 1954.

272 Pac. (2d) 725.

Messrs. Murch and Wuerthner, Mr. Julius J. Wuerthner and Mr. John P. Wuerthner, Great Falls, for appellant.

Messrs. Frisbee and Moore, Cut Bank, for respondent.

Mr. John P. Wuerthner argued orally. Counsel for respondent filed no brief and did not argue.

MR. JUSTICE FREEBOURN:

This is an action wherein R. D. Wood, plaintiff and respondent, sued Melvin Jaeger, defendant and appellant, for damages sustained when Jaeger, through his agents, refused to accept and buy certain cattle as agreed upon by the terms of a written contract. The trial jury found its verdict for Wood in the amount of $558.75. From the judgment following such verdict Jaeger appeals.

In his complaint Wood avers that Jaeger violated the express terms of a written contract which is set out as part of the complaint in exhibit "A", by refusing, through his agents, to receive and pay for certain cattle, and that as a result of such violation Wood had to sell the cattle rejected by Jaeger's agents, at a lesser price than agreed on in the written contract, and with added expense, whereby he suffered damages in the amount of money prayed for.

Jaeger in his answer admits that on or about the 10th day of September 1949, the contract set forth as exhibit "A" in said complaint was entered into between the plaintiff and the defendant. He further avers the cattle plaintiff had to sell were not as represented and for that reason his agents refused to accept them. Continuing, Jaeger averred that certain of the cattle were sold to him through his agents "in an entirely new deal and transaction" on September 15, 1949, which were paid for, and that he "had no further interest in the remainder of the cattle."

The jury were justified in finding from Wood's evidence that in August 1949 one Sirginson, as the agent of Jaeger, visited the Wood ranch in East Glacier Park, seeking to purchase cattle; that Wood and Sirginson went to the "old Neilson place * * * to look at the cattle * * * and * * * drove from one herd of cattle to another bunch all over the pasture * * *" inspecting them; that they were "dealing on that entire group of cattle in that field with ten percent cut," and in connection with such cattle Sirginson visited Wood during the following week and talked "this matter over in the hayfield * * * I told him I would consider the price and wire a night letter which I did that night accepting the offer. * * * Within a day or two at the most * * * Mr. Jaeger sent Mr. Boehler * * * up with a contract and a check for five hundred dollars."

As set out by the trial judge in instruction No. 1 to the jury: "This contract is as follows:

"Great Falls Livestock Commission Co.

"Box 991        Great Falls, Montana        Phone 4348
"Livestock Bill of Sale and Contract

"This Agreement, Executed this 10th day of Sept. 1949, between R. D. Wood of Glacier Station, hereinafter called 'Seller' and Melvin Jaeger of Great Falls, hereinafter called 'Buyer.' Witnesseth: For the sum of Five Hundred Dollars ($500), as part purchase price, in hand paid to the Seller, the receipt of which is hereby acknowledged, said Seller hereby sells and conveys and agrees to deliver to said Buyer, or his order, the

following described livestock, and warrants the title thereto.

| "No Head | Description | Brands | Location | Price |
|---|---|---|---|---|
| "Before Cut | Strs | | R-H | 20 cents |
| better than | Hfrs | | | |
| "80 head | | | | |
| "35 strs | | | | |
| "45 hfrs | | | | 18-½ cents |

"10 Per Cent Cut

to be weighed at Browning with 2 per cent shrink and delivered, scale count guaranteed F. O. B. cars at * * * between or on 15 of Sept., 1949, at Buyers option, or as soon thereafter as cars can be furnished by carrier for final destination.

"All of the above stock to be free from encumbrances, including taxes for year of delivery, and to pass federal and state inspection for interstate shipment. Health and brand certificates to be furnished purchaser, free of charge, on delivery. Above to be free of contagious disease and in merchantable condition.

"Seller /s/ R. D. Wood.

"Buyer /s/ Melvin Jaeger.

"Witness: /s/ A. W. Barkler"

According to Wood the written contract referred "to those cattle which were in the field on Sunday morning when [Wood] and Mr. Sirginson looked at them. * * * We delivered the cattle as we agreed to [the stock yards at] Browning." Jaeger was not at Browning but his agents, Sirginson and Woolf, were there to receive the cattle. "At first they cut their ten per cent out of the cutbacks and then started to cut these cattle again. I asked Mr. Sirginson why and he said he sold the cattle to Woolf. Q. Why did you object to cutting more than ten per cent? A. That wasn't in the contract. They bought all the cattle less the ten per cent. * * * I told them I was going to ship the rest and sue them for the difference * * *" Sirginson refused to take "twenty-two head of heavy heifers. * * * We loaded them on cars and shipped them to the terminal market at Great Falls immediately."

After shipping the rejected cattle to Great Falls, Wood on September 21, 1949, sent a letter to Jaeger at Great Falls, demanding an amount of money as damages equal to the difference between what Wood had received in Great Falls for the rejected cattle and what he would have received "if you had fulfilled your contract," plus the cost of shipping and selling "such cattle."

Such letter was properly received in evidence as constituting a demand before suit by Wood upon Jaeger for the damages Wood had suffered by the failure of Jaeger to carry out the terms of the contract. Evidence submitted by Wood, independent of the letter, corresponded with and supported the statements made in the letter.

No objection was made to any instruction given by the trial judge by either plaintiff or defendant. Such instructions became the law of the case and the jurors were bound to follow them. Allen v. Bear Creek Coal Co., 43 Mont. 269, 115 Pac. 673; see also, Ingman v. Hewitt, 107 Mont. 267, 86 Pac. (2d) 653; Cowden v. Crippen, 101 Mont. 187, 53 Pac. (2d) 98.

By instruction No. 1 the trial judge fully and fairly set out the theories of the parties, as shown by the pleading and the evidence.

By instruction No. 3 the jury were told: "* * * if you find, from a preponderance of the evidence, that Plaintiff fully performed his part of the contract for the sale of the cattle in question and that Defendant wrongfully refused and failed to perform his part of the contract for the sale of the cattle in question, and that Plaintiff thereupon resold such cattle as Defendant should have purchased under the terms of the contract for sale, then the damages if any suffered by the Defendant are an amount equal to the difference between the price of said cattle as stated in said contract, and the price plaintiff received in the resale of these cattle, plus an amount equal to the reasonable and necessary expense of said resale.

"In this connection, the reasonable and necessary expenses of resale may consist of such expenses as freight and commissions

paid by the Plaintiff for transporting the cattle to market, the care and feeding of such cattle pending their resale."

This instruction, justified by plaintiff's evidence, laid down ▮ the yard stick by which the jury could determine plaintiff's damage if the jury found for him. Under this instruction the jurors, under the evidence, were justified in finding their verdict for the plaintiff and in the amount they did find.

Instruction No. 5 was as follows: "An executory written contract may be terminated by mutual consent of the parties or by a subsequent parole agreement and said termination may be established by evidence of the acts and declarations of the parties, and if you find from the evidence that the written contract between the plaintiff and defendant was terminated by a subsequent oral agreement entered into between parties and if you also find that the defendant fully performed the subsequent oral agreement then your verdict must be for the defendant."

Under this instruction which followed defendant's theory of ▮ the case and was justified by defendant's evidence, the jury, had they been so minded, could have brought in a verdict for defendant.

This is a law case and the jury are the judges of the facts ▮ and the effect and value of the evidence.

Under R. C. M. 1947, sec. 93-2501-1, "All questions of fact, where the trial is by jury * * * are to be decided by the jury, and all evidence thereon is to be addressed to them * * *". They are, by virtue of R. C. M. 1947, sec. 93-2001-1, "the judges of the effect or value of evidence addressed to them * * * [and] are not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a less number, or against a presumption or other evidence satisfying their minds * * *". See also, Gilmore v. Mulvihill, 109 Mont. 601, 98 Pac. (2d) 335; Wibaux Realty Co. v. Northern Pac. Ry., 101 Mont. 126, 54 Pac. (2d) 1175; McGonigle v. Prudential Ins. Co., 100 Mont. 203, 46 Pac. (2d) 687; and Wallace v. Wallace, 85 Mont. 492, 279 Pac. 374, 66 A. L. R. 587.

For the reasons stated the judgment of the district court is affirmed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES BOTTOMLY, ANGSTMAN and ANDERSON, concur.